The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Nick AVILA, Defendant–Appellant.

No. 86CA0781.

Colorado Court of Appeals, Div. V.

Dec. 1, 1988.

Rehearing Denied Dec. 29, 1988.

Certiorari Denied March 27, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Russel, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lynn Palma, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, Nick Avila, appeals a judgment of conviction as to two counts each of second degree forgery and conspiracy to commit second degree forgery. We affirm.

The charges against Avila, a lawyer, arose out of his role in altering, on behalf of two of his clients whose driver's licenses were under revocation for alcohol related offenses, the driver records of the State Motor Vehicle Division (MVD) which were maintained on computer disc. Avila charged his clients between $1500 and $3000 for this "service."

After receiving the money in cash from the client, Avila would inform a contact who worked in the MVD office. This contact, who had access to the computer data base where the driving records were maintained, would then, without authorization, delete the client's driving records. After a period of two weeks, the client would apply for a driver's license, stating he had no previous driver's license. When the motor vehicle clerk would check this person's name and date of birth, the computer would show "no driver history," and the person would be issued a driver's license.

When irregularities in the computer data base were detected internally, an investigation was conducted with the help of the district attorney's office. This culminated in the arrest of 22 persons involved in this scheme, including Avila.

## I. SUFFICIENCY OF EVIDENCE– FORGERY

■ Initially, we note that much of Avila's argument relies on the assertion that forgery cannot be committed on a computer. We reject that contention.

A forgery can be made by any number of artificial means. *United States v. London,* 714 F.2d 1558 (11th Cir.1983) (forgery by photocopy machine). Indeed, "whether [the forgery] is made with the pen, with a brush ... with any other instrument, or by any other device whatever; whether it is in characters which stand for words or in characters which stand for ideas ... is quite immaterial...." *Benson v. McMahon,* 127 U.S. 457, 8 S.Ct. 1240, 32 L.Ed. 234 (1888), quoting 2 Bishop, *Criminal Law* § 525 (1882).

Avila also contends, in essence, that there was insufficient evidence to sustain his convictions. We disagree.

The elements of second degree forgery pertinent to this case are that (1) the defendant, (2) with intent to defraud, (3) falsely alters, (4) a written instrument, (5) which is or purports to be, or which is calculated to become or to represent if completed, a "written instrument officially issued or created by a public office, public servant, or government agency." Section 18–5–103(1)(c), C.R.S. (1986 Repl. Vol. 8B).

## A. WRITTEN INSTRUMENT

■ Avila contends that there was no written instrument in this case so the forgery conviction cannot stand. We disagree.

Section 18–5–101(9), C.R.S. (1986 Repl. Vol. 8B) defines "written instrument" as follows:

" 'Written instrument' means any paper, document, *or other instrument containing written or printed matter or the equivalent thereof,* used for purposes of reciting, embodying, conveying, or recording information ... which is capable of being used to the advantage or disadvantage of some person." (emphasis supplied)

A fair reading of the statute indicates that a computer disc is included in the definition of a "written instrument."

This conclusion is bolstered by the fact that the previous forgery statute contained a list of specific written instruments. *See* C.R.S. 1963, 40–6–1. When the present statute was enacted in 1971, this list was eliminated.

## B. FALSE ALTERATION

Next, Avila contends that, since the driving records were deleted, the evidence at trial does not support the finding that he falsely altered a written instrument. He argues that "alter" means to change, while "delete" means to cause to vanish com-

pletely. Therefore, he claims he committed no forgery. We are not persuaded.

Section 18–5–101(2), C.R.S. (1986 Repl. Vol. 8B) states:

"To 'falsely alter' a written instrument means to change a written instrument without the authority of anyone entitled to grant such authority, *whether it be* in complete or incomplete form, *by means of erasure,* obliteration, *deletion,* insertion of new matter, transposition of matter, or any other means, so that such instrument in its thus altered form falsely appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker." (emphasis supplied)

The record shows that the driving records of two of Avila's clients were deleted so that instead of containing their history of driving violations, the computer found no driving record and thus would display the message "no record found."

■ Under the plain language of the statute, Avila's actions constituted a false alteration within the meaning of § 18–5–101(2).

## C. DeROSE DOCTRINE

Next, Avila asserts that there is a distinction between a document falsely made and a genuine document that contains false information. Based on this distinction, he contends that the written instruments were not false but rather were genuine MVD documents which contained false information and, as such, they cannot form the basis for a forgery conviction. We disagree.

In *DeRose v. People,* 64 Colo. 332, 171 P. 359 (1918), the court held that a false statement of fact in an instrument which is genuine is not forgery. It stated:

"This writing is what it purports to be—a true and genuine instrument, although it contains false statements. It is not a false paper, and the execution of such a document does not constitute forgery."

However, the forgery statute now in effect, § 18–5–101(2), was enacted since the *DeRose* ruling, and it provides as quoted in Part II B above relative to this question.

Nevertheless, we do not reach the issue of what effect this statutory language has on the *DeRose* doctrine since, under either that holding or a literal reading of the statute, Avila's conviction is not defective.

In *DeRose,* defendant was a railroad foreman whose job was to draft and submit the time rolls for his men. He was charged with forgery because he credited one of his men with more days than the man had worked. Because the defendant was authorized to draft and submit the time roll, the court found that the document was not "falsely made." It was a genuine railroad time roll prepared by one authorized to do so, but which contained false information.

Similarly, in *U.S. Fidelity & Guaranty Co. v. First National Bank,* 147 Colo. 446, 364 P.2d 202 (1961), a borrower with authority to do so drafted invoices which falsely represented amounts owed to him for goods and services. The court found, citing *DeRose,* that the invoices were genuine and, thus, there was no forgery.

■ In both *DeRose* and *U.S. Fidelity,* the defendant had the authority to perform the general act that led to the production of the document containing the false information. In contrast, in the instant case, testimony showed that Avila's confederate at the MVD had no authority to delete driver histories. Therefore, under *DeRose,* the documents were forged.

■ Likewise, under § 18–5–101, et seq., C.R.S. (1986 Repl. Vol. 8B), Avila's confederate acted "without the authority of anyone entitled to grant such authority," and, thus, the computer disc was falsely altered. Therefore, under either analysis, a forgery occurred.

## D. OFFICIALLY ISSUED

Next, Avila contends that there was no "officially issued" written instrument. He

argues that a driver history is only "officially" created when it is certified with a seal. We disagree.

■ Section 18–5–103, C.R.S. (1986 Repl Vol 8B) in pertinent part states:

"(1) A person commits second degree forgery, if, with intent to defraud, he falsely makes, completes, alters, or utters a written instrument *which is* or purports to be, *or which is calculated to become or to represent if completed:*

. . . .

"(c) A written instrument officially issued or created by a public office, public servant, or government agency." (emphasis supplied)

Driving records are official records of the state of Colorado. Section 42–2–118(2), C.R.S. (1984 Repl. Vol. 17).

As held in Part II A above, the MVD computer storage discs which contain the driving records are written instruments. Also, the driving records stored upon these written instruments are created by a government agency, since it is the MVD which enters the information to be stored. Moreover, actual authentication is not required under the plain language of § 18–5–103.

## II. SEVERANCE

Avila next asserts that his motion for separate trials should have been granted. We disagree.

Section 18–1–408(4), C.R.S. (1986 Repl. Vol. 8B) states:

"When a defendant is charged with two or more offenses based on the same act or series of acts arising from the same criminal episode, the court, on application of either the defendant or the district attorney, may order any such charge to be tried separately, if it is satisfied that justice so requires."

Crim.P. 14 states:

"If it appears that a defendant ... is prejudiced by a joinder of offenses ...

the court may order ... separate trials of counts ... or provide whatever other relief justice requires...."

In determining what comprises a "criminal episode" the supreme court "without ... delineat[ing] the full scope of this standard," has held that nearness in time, proximity of place, and unity of scheme are some of the factors to be considered. *Corr v. District Court,* 661 P.2d 668 (Colo.1983). Also, it is important to consider whether the offenses involve the same conduct, *Brutcher v. District Court,* 195 Colo. 579, 580 P.2d 396 (1978), and whether the offenses involve interrelated proof. *People v. Rogers,* 742 P.2d 912 (Colo.1987).

■ In this case, the trial court held, and we agree, that the offenses were characterized by nearness of time. The court stated:

"The periods of time alleged in the conspiracy charges overlap one another.... Additionally, the dates alleged in counts 1 and 3 are sixteen days apart. Under the circumstances of this case, and in considering the type of crime involved, and the amount of time that it allegedly took to set up and complete these crimes, the dates of December 29th, 1983, and March 8th, 1984, are in close sequence."

Also, a significant portion of the criminal activity occurred at the same location—the MVD. Finally, the four counts were related to each other by unity of purpose and scheme and involved interrelated proof.

Under these circumstances, the offenses were properly joined and there was no abuse of discretion in not severing them.

## III. RIGHT TO COUNSEL

Next, Avila contends he should have been permitted to represent himself as co-counsel and that the trial court's denial of his entry of appearance impermissibly restricted his right to practice law. We disagree.

■ The right to counsel and the right to self-representation are fundamental un-

der both the Sixth Amendment and Colo. Const. art. II, § 16. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Lucero,* 200 Colo. 335, 615 P.2d 660 (1980). But there is no right for a defendant to be represented by counsel and simultaneously conduct his own defense. *People v. Romero,* 694 P.2d 1256 (Colo.1985); *Moore v. People,* 171 Colo. 338, 467 P.2d 50 (1970). While appointment of advisory counsel for a pro se defendant is permissible, it is a matter within the discretion of the trial court. *People v. Romero, supra.* There was no abuse of that discretion here in denying Avila's entry of appearance as co-counsel.

In *Denver Bar Ass'n v. Public Utilities Commission,* 154 Colo. 273, 391 P.2d 467 (1964), the practice of law is defined as follows:

> "[O]ne who acts in a representative capacity in protecting, enforcing, or defending the legal rights and duties *of another* and in counselling, advising and assisting him in connection with these rights and duties is engaged in the practice of law." (emphasis supplied)

Hence, to be engaged in the practice of law, one must represent another. It follows that one who is representing himself is not practicing law. Therefore, the court's ruling denying Avila the right to appear as co-counsel did not restrict his right to practice law.

### IV. OTHER CONTENTIONS

We have considered Avila's other contentions and find no reversible error.

JUDGMENT AFFIRMED.

PLANK and FISCHBACH, JJ., concur.