(No. 70779.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL F. HAGAN, Appellant.

*Opinion filed November 21, 1991.*

Michael F. Hagan, of Buffalo Grove, appellant *pro se*.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Marcia L. Friedl, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a bench trial in the circuit court of Lake County, defendant, Michael F. Hagan, was found guilty of forgery and attempted theft by deception of over $100,000 (Ill. Rev. Stat. 1987, ch. 38, pars. 17—3(a)(2), 8—4(a), 16—1(b), (e)). The appellate court affirmed defendant's conviction for forgery, but reversed the conviction for attempted theft by deception (199 Ill. App. 3d 267). Defendant, *pro se*, petitioned this court for leave to appeal from the appellate court's affirmance of his for-

gery conviction. We granted defendant leave to appeal (134 Ill. 2d R. 315). We affirm.

## BACKGROUND

The count of the indictment charging defendant with forgery alleges that defendant:

> "[O]n or about February 7, 1989, in the County of Lake and State of Illinois, *** committed the offense of FORGERY in that *** defendant with the intent to defraud knowingly delivered to Michael Flynn, a document, to wit: a letter from the First Midwest Bank of Lake County, apparently capable of defrauding another, in that it was purported to have been made by Laura M. Jones, a personal banker on January 27, 1989, knowing said document to have been altered so as to misrepresent the defendant's financial bank balances in a money market account and a checking account."

At trial, Michael Flynn testified that he was the vice-president of leasing of Hiffman, Shaffer and Anderson, a commercial and corporate real estate firm. In February 1989, defendant contacted Flynn and expressed an interest in leasing approximately 12,000 square feet of office space in Schaumburg, Illinois, for a 10-year lease period. Flynn informed defendant that the leasing rate would be approximately $20,000 to $25,000 per month.

On February 7, 1989, Flynn received, via a facsimile machine, a letter containing a letterhead of First Midwest Bank of Mundelein. The "faxed" letter and transmittal cover sheet were admitted into evidence. The transmittal cover sheet indicates "Mike Flynn" of "H.S.A." company as the addressee. The sheet provides a "fax number" which Flynn testified is the "telephone" number to the facsimile machine in his office. The sender is indicated as "M.F.H." of "Hagan Corp." Further, the cover sheet indicates that transmittal was via Mailboxes, Etc. in Vernon Hills, Illinois.

We note that the letter attached to the cover sheet, dated January 27, 1989, is addressed to Michael Hagan in Vernon Hills, and is signed by Laura M. Jones, a personal banker. The letter sets forth in the first paragraph the account numbers for a "company money market account" and a checking account, and provides the dates on which the accounts were opened. In a second paragraph, an "Account Printout" is provided, indicating purported average balances for the two accounts during 1988 and 1989. The average balance for one account was $593,661 for 1988 and $522,098 for 1989; for the other account, the average balances are stated to be $65,088 for 1988 and $77,902 for 1989.

Flynn stated that he telephoned the bank and spoke to Laura Jones in order to verify the authenticity of the letter. Flynn then "faxed" to Jones a copy of the letter he had received. Flynn again met with defendant, and the two continued negotiations for the office space. Flynn and defendant, however, never executed a lease agreement.

Laura Jones testified that on January 27, 1989, defendant contacted her at First Midwest Bank of Mundelein asking to prepare a letter setting forth his accounts and indicating their balances. Jones informed defendant that the average balances for the accounts were "either negative or very low." Defendant then requested Jones to prepare a letter setting forth the account numbers and the dates on which the accounts were opened, which Jones did. On a separate sheet, Jones provided, for defendant's own information, the balances of the accounts. Jones gave copies of the letter and the additional sheet to defendant and kept copies for her records.

The letter and additional note which Jones stated that she sent to defendant were admitted into evidence. The letter, dated January 27, 1989, and addressed to

Michael Hagan, appeared to be the same letter which defendant had "faxed" to Flynn, except that the letter which Jones sent did not contain account balances. Rather, the letter sent by Jones was blank on that area of the page where, on the "faxed" letter, the account balances appeared. The additional note which Jones sent to defendant stated, "Mike, this is for your information," and provided that the average balance on one of the accounts was $13 and the average balance on the other account was -$753.

Jones further testified that on February 13, 1989, Flynn contacted her, requesting information regarding defendant's accounts. Jones told Flynn that she could not give information about defendant's accounts, but agreed that if Flynn "faxed" to her the letter he had received from defendant, Jones could verify that she had prepared it. Jones testified that the letter which she then received from Flynn was not the same one she had prepared for defendant, since the letter Flynn sent to her contained account balances. The facsimile transmittal which Flynn sent to Jones was admitted into evidence.

Julie Murphy testified that she was an employee of the Mailboxes, Etc. store in Vernon Hills in Lake County. On direct examination, Murphy stated that on February 7, 1989, she saw defendant come into the store to send a document via the store's facsimile machine. Murphy identified a facsimile cover sheet and a letter, which were admitted into evidence. Murphy stated that the cover sheet was one that her store sends with "faxed" documents and is the sheet which the customer fills out.

Murphy stated that the cover sheet shows that the letter was sent by defendant to Mike Flynn. We note that the letter is typed on First Midwest Bank stationery, dated January 27, 1989, addressed to defendant and signed by Laura Jones, and contains defendant's account numbers and purported average balances for his two ac-

counts. Murphy stated that she could see that the letter was sent from her place of business, since the name of the store, "MAILBOXES," the date and time that the letter was sent all appear printed at the top of page one, the cover sheet, and page two, the letter.

On cross-examination, Murphy stated that defendant had been in the store "probably two" times. Murphy testified that the procedure for sending a document via the facsimile machine involves the customer's filling out a cover sheet. The cover sheet indicates the recipient; who the document is from; how many pages are being sent; and Murphy's name as a person to contact, so that she could "resend the FAX if necessary." After the customer fills out the cover sheet, the store sends the cover sheet in addition to however many pages the customer wishes to send. The customers generally take the original "faxed" documents, including the transmittal sheets, with them. Sometimes, when there is a busy signal on the line and the customer does not wish to wait for the line to clear, the customer may leave the originals at the store. The store, however, does not retain those documents.

Murphy also stated on cross-examination that she did not know defendant's name until some detectives came into the store, showed her a picture of defendant, and told her his name. She stated that she could not recall on her own on which date defendant came into the store, but that she remembered "dealing with him." Murphy stated that it was the facsimile sheet which indicated to her that defendant was in the store on February 7, 1989. Murphy stated that the store's facsimile machine is "timely" as to the dates it prints on the documents. Murphy stated that she is the only one who sends documents via the facsimile machine.

Murphy also testified that she sometimes reads documents which people give her to "fax," but that she did

not recall reading the documents at issue here. Since she had not read the letter sent from Mailboxes, Etc. on February 7, 1989, before it was "faxed," Murphy could not verify by the contents of the letter that it was the same one received by Flynn. Murphy admitted that it was possible that someone other than defendant could have come into the store on February 7, 1989, and filled out the transmittal sheet to indicate that the sender was defendant. Murphy stated, however, that that possibility was "very unlikely," because she remembered defendant from when he came into the store. Murphy admitted that defendant's name does not appear on the transmittal sheet, but only "HAGAN Corp." and "M.F.H."

Murphy also stated that it is possible that a facsimile machine other than the one at Mailboxes, Etc. could be programmed to print "Mailboxes, Etc." on a transmittal sheet as the place of origin of a "faxed" document. Murphy explained that a worker who came to clean and otherwise service the machine programmed the store's facsimile machine.

Mary Riley testified that she was a leasing agent for L.J. Sheridan Company on Michigan Avenue in downtown Chicago. On about March 6, 1989, Michael Hagan telephoned Riley at her office and expressed an interest in seeing the Sheridan building for possible leasing as office space. Defendant arrived at the building and stated that he was interested in leasing approximately 15,000 square feet of office space. Riley told defendant that she would need a financial statement from him. Later, Riley tendered to defendant a written lease proposal for a 10-year lease. Riley testified that defendant then gave her a letter from his personal banker. The letter was admitted into evidence, and appeared to be the same letter, containing purported account balances, which Flynn testified he received via facsimile machine from defendant.

Defendant testified that, in 1981 and after, he owned a business which packaged legal services and sold memberships to persons or groups. Beginning in 1986, defendant leased office space for his business in Vernon Hills, Illinois. A dispute developed between defendant and the lessor of the office space as to heating and air conditioning problems in the building and defendant's being late in rent payments. Defendant testified that in May 1988, he and the lessor reached an agreement regarding the dispute, and defendant was allowed to stay in the space until August. Defendant subsequently experienced difficulty in attempting to lease other office space. Defendant became aware that certain brokers and two police officers apparently were disseminating information that defendant had been evicted from the Vernon Hills office space and that the police were investigating him.

In November 1988, defendant, who is not an attorney, was arrested and charged with theft by deception and impersonating a judicial officer based on the alleged sale of legal services to a police association. Subsequently, the charges were dismissed. In January 1989, defendant decided that he would attempt to discover how the allegedly false information about him was being disseminated. He decided to "act[ ] as if I was interested" in leasing large amounts of office space in areas where he was not truly interested in leasing space. Defendant characterized his decision as to his future conduct as a "ruse." Defendant was aware that if he expressed an interest in a large area of space, a potential lessor would conduct a financial check into defendant's affairs. Defendant hoped that such a financial check would reveal who was disseminating the allegedly false information about him.

Defendant further testified that on January 27, 1989, before contacting Michael Flynn, or "before I had actually even decided exactly for sure how I was going to try

to get this credit information out of the brokering community," defendant requested that Laura Jones of First Midwest Bank prepare a letter indicating information about his accounts at the bank.

On February 3, 1989, defendant telephoned Flynn to express his interest in leasing space in Schaumburg. Defendant told Flynn that before having a floor plan drawn up and prior to any other lease negotiations, defendant wanted to know whether his credit was approved. Flynn asked defendant first to meet a space planner, which defendant did. Later, Flynn asked defendant for bank information. Defendant asked Flynn "if it would be okay" if defendant sent him via facsimile machine a letter defendant had obtained from the bank. Flynn responded affirmatively.

Defendant stated that he had the sealed letter which he had received from Laura Jones in his brown briefcase. Defendant went to Mailboxes, Etc. in Vernon Hills, where he had "FAXed probably 50 or 60 documents before from." Defendant filled out "FAX documents," opened his attache case, and saw that the letter was not in the case. He realized that the letter was at home in his other briefcase. Defendant called home and spoke to his mother. He asked her to look in the briefcase at home for a sealed envelope from First Midwest Bank. Defendant told his mother that he was in a hurry to go to a meeting. He told her that he would drop off the facsimile cover sheet in the mailbox at home, and he asked her to go to Mailboxes, Etc. that afternoon to send the letter and cover sheet via the facsimile machine.

Defendant further testified that during continuing negotiations with Flynn relating to the office space in Schaumburg, Flynn asked defendant about information Flynn had received from some brokers as a result of a financial check into defendant's background. Flynn told defendant that the brokers provided information about

defendant's prior arrest and indictment on theft and impersonating a judicial officer. In response to defendant's questions, Flynn told him the sources of the information he had received. Defendant testified that at that point, he had acquired from Flynn the information he was seeking. Defendant then told Flynn that he no longer wished to rent the office space.

Defendant also stated that after cancelling the negotiations with Flynn, defendant "ran the same ruse" with lessors of buildings in the downtown Chicago area. Defendant was shown the letter admitted into evidence which Riley testified was the letter she received from defendant. In response to questioning, defendant stated that he had delivered that letter to Ron Garvey, who was Riley's boss. Defendant stated that when he delivered the letter to Garvey, he was aware that the purported account balance information was contained in the letter.

## DISCUSSION

In this appeal, defendant asserts that: (1) forgery was not proved beyond a reasonable doubt, since the elements of venue, identification, and capability of the allegedly forged document to defraud were not proved beyond a reasonable doubt; and (2) the defense was prejudiced by the admission at trial of improper evidence where: (a) the authenticity of the "faxed" letter and its transmittal cover sheet was not established; (b) Michael Flynn could not attest that the allegedly forged documents were received through his facsimile machine; and (c) the "faxed" letter and its transmittal cover sheet are inadmissible hearsay.

## Venue

First, defendant asserts that venue was not proved beyond a reasonable doubt and that the trial court erred in denying defendant's motion for a directed verdict

based on lack of proof of venue in Lake County, the place from which the allegedly forged letter was "faxed." Defendant asserts that venue was proper in Cook County, rather than Lake County. In support of his argument, defendant cites *Murtagh v. Leibowitz* (1951), 303 N.Y. 311, 101 N.E.2d 753, and *In re Application of Poston* (Okla. Crim. App. 1955), 281 P.2d 776, for the proposition that a single indivisible offense is not within operation of statutes that allow prosecution in more than one county. Defendant also cites *Poston* and *State v. Graham* (1901), 23 Utah 278, 64 P. 557, to support his assertion that an offense must be divisible, with each part unlawful in and of itself, committed at a different time and place, in order for prosecution in more than one county to be permissible.

Defendant fails to follow through on his analysis of these cited cases *vis-a-vis* the facts of his case. Apparently, defendant contends that forgery is an offense which is not divisible, and therefore cannot be prosecuted in more than one county. We note, however, that in *Murtagh*, *Poston*, and *Graham*, the courts addressed the issue of prosecution of an offense in a county in terms of the "jurisdiction" of the court, rather than venue. These cases do not bear upon the question before us now. In any event, we decline to follow this authority.

Further, defendant cites *People v. Longoria* (1983), 117 Ill. App. 3d 241, for the proposition that venue is proper where an offense was committed. Defendant asserts, without citation to authority, that the alleged forgery was committed where the delivery of the allegedly forged document took place. Defendant asserts that delivery took place in Cook County. Further, defendant raises grounds to support a conclusion that venue in Lake County was not proven. First, defendant asserts that Murphy's testimony was insufficient to show that delivery occurred in Lake County. Specifically, the fac-

simile-machine-imprinted information on the transmitted documents indicating a time, date, and location from where the document was "faxed," and which Murphy relied on to testify as to delivery, was insufficient to prove that venue was proper in Lake County.

Second, defendant contends that venue in Lake County was not proven because the evidence showing delivery of the document to Flynn was insufficient. Defendant notes Flynn's testimony that his secretary put the "faxed" documents on his desk. Flynn testified that his office is in Des Plaines, located in Cook County. Defendant argues that Flynn's testimony indicates that delivery apparently was made, not by defendant but by Flynn's secretary, in Cook County. Third, defendant asserts, Flynn's testimony that the facsimile cover sheet indicated, in what defendant refers to as "an unknown person's handwriting," that it was from "Hagan Corp." was not sufficient to prove that the document was sent by defendant.

The venue provision of the Criminal Code of 1961 states that a criminal offense is to be tried "in the county where the offense was committed." (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(a).) In Illinois, venue is a material allegation which must be proved beyond a reasonable doubt along with the other elements of an offense. (*People v. Pride* (1959), 16 Ill. 2d 82, 86; *People v. Long* (1950), 407 Ill. 210.) In *People v. Church* (1937), 366 Ill. 149, this court stated that, due to the secretive nature of the offense, in forgery cases, venue often must be proved by circumstantial, rather than direct, evidence. (*Church*, 366 Ill. at 158; see also *Long*, 407 Ill. at 212-13.) Thus, in order for a party to prove venue beyond a reasonable doubt, the law allows inferences from established facts. *Church*, 366 Ill. at 158; see also *People v. Toellen* (1978), 66 Ill. App. 3d 967.

The indictment in the instant case charges that defendant committed forgery in Lake County in that he delivered the bank letter to Michael Flynn with the intent to defraud. Defendant's trial took place in Lake County. To determine where the offense was committed for purposes of venue, we must determine where the acts which constitute the offense occurred. (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(a).) The only element which defendant contests is the element of delivery. Defendant contends that delivery by him was not proven, and that delivery in Lake County was not proven.

Defendant's argument requires us to interpret the meaning of "delivers" in section 17—3(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 17—3(a)(2)). It appears that no Illinois cases to date have specifically interpreted the term "delivers" in a factual context similar to the instant case. In determining the meaning of "deliver," we look to its ordinary dictionary definition. The American Heritage Dictionary defines "deliver" as: "[t]o release"; "[t]o surrender to another; hand over"; "[t]o take to the intended recipient." American Heritage Dictionary 378 (2d ed. 1985).

Based on the ordinary meaning of "deliver," we find that the evidence was sufficient to prove, first, that delivery of the letter was made by defendant. Defendant himself testified that he had had the letter prepared by Laura Jones, and that he told Flynn to expect to receive a bank letter via facsimile machine. Defendant further stated that he went to Mailboxes, Etc. and filled out a facsimile transmittal sheet on February 7, 1989. Murphy testified that the facsimile documents, including the cover sheet and the letter, indicated that defendant, "M.F.H." of "HAGAN Corp.," was the sender of the documents, and that they were sent via the Mailboxes, Etc. facsimile machine on February 7, 1989. Murphy recalled seeing defendant in the Mailboxes, Etc. store

around the date the letter was sent. Further, Flynn stated that he received the letter which defendant had sent. We hold that the evidence was sufficient for the trial court to conclude that it was defendant who delivered the letter when he "released," "surrendered" or "handed over" the letter to be "faxed."

In determining whether delivery occurred in Lake County, we again look to the ordinary meaning of "deliver." The evidence shows that defendant "released," "surrendered," or "handed over" the letter in Lake County when he sent the letter or caused it to be sent to Flynn via facsimile machine. Defendant admitted having the letter in his possession in Lake County before it was sent to Flynn. He went to the Mailboxes, Etc. store, located in Lake County, and filled out the facsimile transmittal document. Then, he sent the letter or caused it to be sent from the Mailboxes, Etc. store in Lake County. We hold that the evidence was sufficient to prove that defendant's acts within Lake County constituted "delivery" in Lake County in that he "released," "surrendered," or "handed over" the letter in Lake County. Accordingly, venue was proper in Lake County, the county in which defendant was tried.

## Identification

Next, defendant contends that his identity as the sender of the allegedly forged document was not proved beyond a reasonable doubt. Defendant asserts that Julie Murphy's testimony as to identification was not reliable and therefore was inadmissible because the out-of-court identification procedure created a very substantial likelihood of irreparable misidentification. Defendant cites *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, and *People v.*

*Townes* (1985), 130 Ill. App. 3d 844, which relies on *Biggers*.

The cited cases are inapposite. *Manson* and *Biggers* set forth factors to be considered by a court in determining the reliability and sufficiency of identification evidence at trial where there allegedly has occurred an overly suggestive pretrial identification resulting from police conduct. These cases do not address the identification issue raised here by defendant. In any event, defendant failed to raise as an issue in his post-trial motion that an overly suggestive out-of-court identification procedure resulted from conduct of the detectives, or any similar argument. Accordingly, defendant has failed to preserve the issue for appeal, and we need not consider the issue here. *People v. Enoch* (1988), 122 Ill. 2d 176, 186. See also *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 209-10.

Defendant also asserts that the testimony of Murphy as to the identification of defendant as the sender of the facsimile document is insufficient. For instance, defendant argues, Murphy did not recall whether defendant was in the store on the day the documents were sent. In addition, defendant asserts that his own testimony that he directed his mother to send by facsimile machine the letter contained in the sealed envelope in his briefcase does not amount to defendant's identifying himself as the deliverer of a document that he knew to be altered. Accordingly, defendant asserts, the element that defendant knowingly delivered an altered document to Mailboxes, Etc. was not proven.

As we stated above in response to defendant's venue argument, we have found the evidence sufficient for the trial court to conclude beyond a reasonable doubt that defendant was the sender of the "faxed" letter. The circumstances surrounding the transmittal of the letter demonstrate that defendant was the sender of the docu-

ment. For instance, defendant testified that he told Flynn that he would send a bank letter to him via a facsimile machine. Further, defendant testified about the actions he took to send or cause to be sent the letter. In addition, Murphy testified that she recalled defendant being in the Mailboxes, Etc. store around the date on which the letter was sent. Further, Murphy stated that the documents which were sent indicated that defendant was the sender and Flynn the addressee, and the facsimile-machine-printed information appearing on them showed that they were sent from the Mailboxes, Etc. store on February 7, 1989. Further, Flynn testified that he received the documents which defendant had sent. All of this evidence supports the trial court's conclusion that the identification of defendant as the sender of the "faxed" document was sufficiently shown.

Defendant also asserts that Murphy's testimony constitutes hearsay because the source of her knowledge was the documents themselves and the detectives who interviewed her and showed her a photograph of defendant, whom they identified as Michael Hagan. Defendant notes that Murphy testified that she recognized defendant as a customer who had been in Mailboxes, Etc. twice. However, she did not know his name until after she indicated to detectives or assistant State's Attorneys that she recognized the photograph. Defendant failed, however, to raise this issue in his post-trial motion, and therefore has failed to preserve the issue for appeal. Accordingly, we need not consider this issue. *Enoch*, 122 Ill. 2d at 186; see also *Hammond*, 97 Ill. 2d at 209-10.

Additionally, as part of his argument regarding identification, defendant contends that the trial court improperly denied his motions to sever the trial on the forgery count from the trial on the attempted theft count. Defendant apparently claims that he was prejudiced with regard to the forgery conviction as a result. Defendant

asserted in the trial court that if the charges were prosecuted separately, he would not have taken the stand in the forgery case.

We note, however, that defendant did not assert the severance argument in the appellate court. Where the appellant in the appellate court fails to raise an issue in that court, the issue will not be addressed by this court. (*Hammond*, 97 Ill. 2d at 209-10.) Accordingly, we will not address the question of whether the trial court properly denied defendant's motion to sever.

### Capability of the Document to Defraud

Defendant next asserts that the State failed to prove that the allegedly forged document had the capability to defraud. Defendant asserts that the State attempted to show that the letter was delivered for the purpose of causing Flynn to enter into a lease with defendant. Defendant contends, however, that because Flynn requested other financial information from defendant and checked the authenticity of the letter with its purported maker, and because "all of the information was part of a context of intensive negotiations between Flynn and the defendant," the letter was not capable of defrauding Flynn. Further, defendant relies on the reasoning in the appellate court opinion as to the attempted theft by deception count. Defendant notes that the appellate court, in finding the evidence insufficient on the attempted theft by deception count, found that defendant failed to take a substantial step toward the commission of the offense. Defendant reasons that if the letter was capable of defrauding, the appellate court would not have reversed the conviction for attempted theft by deception.

Section 17—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 17—3(c)) provides:

> "A document apparently capable of defrauding another includes, but is not limited to, one by which any

right, obligation or power with reference to any person or property may be created, transferred, altered or terminated."

The Illinois Appellate Court has stated a test for determining whether an allegedly forged document is apparently capable of defrauding another as whether a reasonable person might be deceived into accepting the document as genuine. *People v. Turner* (1989), 179 Ill. App. 3d 510, 518.

We find that, in the instant case, the appellate court properly found that the letter sent to Flynn was apparently capable of defrauding Flynn within the meaning of section 17—3(c). The letter was on a letterhead from First Midwest Bank and contained the signature of Laura Jones, a personal banker. The letter set forth the account numbers of defendant's bank accounts, and the dates upon which the accounts were opened. Then, in a second paragraph, there was a printout of average balances for the two accounts for 1988 and 1989. Flynn testified that the letter appeared to contain pertinent information as to defendant's bank accounts. Flynn further stated that he had requested such financial information from defendant to help him in determining whether to execute a proposed lease agreement with defendant.

That a reasonable person could have believed, based on the letter, that defendant had thousands of dollars in his bank accounts, when in fact the true account balances were "negative or very low," is apparent from the evidence. Further, the evidence is sufficient to support an inference that Flynn might rely on the false information, not knowing it was false, to continue negotiations with defendant and perhaps also execute a lease agreement with defendant. The letter thus was capable of "altering" the obligations of defendant and Flynn under any lease agreement they might have entered into, and also was capable of altering the course of negotiations

for the office space. Accordingly, under section 17—3(c), the letter was capable of defrauding Flynn.

That Flynn may have had other sources of information as to defendant's financial status, as defendant may have revealed during the course of their negotiations, does not change the result. We note, however, that the record is not clear as to what other sources of financial information defendant made available to Flynn. One source apparently was tax returns, which defendant sent to Flynn and which defendant admitted at trial were false. Further, defendant admitted at trial that he did not have any major credit cards, and that he had the letter from the bank prepared as a reflection of his financial status. Therefore, the record does not support defendant's assertion that Flynn should have known that the document contained false information.

Further, we reject defendant's argument that the appellate court's reversal of the attempted theft by deception conviction supports a conclusion that the letter was not capable of defrauding. The appellate court held that the actual signing of a lease agreement would constitute a "substantial step" necessary to convict defendant of attempted theft (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 16—1(b), (e)). (199 Ill. App. 3d at 283-85.) However, with regard to the forgery count, a court need not look to whether a "substantial step" was taken. Rather, the analysis, as provided above, is whether the allegedly forged document is apparently capable of defrauding another. As we have stated, the evidence is sufficient to prove that the letter defendant sent to Flynn was apparently capable of defrauding Flynn. Accordingly, we find no merit in defendant's argument.

### Foundation and Authentication

Defendant next asserts that he was prejudiced by the admission at trial of improper evidence. First, he main-

tains that the authenticity of the "faxed" letter and cover sheet was not established. Defendant asserts that the letter was admitted into evidence after the testimony of Flynn and Murphy, and that their testimony failed to establish the proper authenticity.

Defendant notes that neither witness claimed to have written the letter. Further, Flynn's testimony that his secretary placed the "faxed" letter and transmittal sheet on his desk does not authenticate the author of the letter or show that the letter actually came from the facsimile machine in Flynn's office. Murphy's testimony that the documents appear to be facsimile documents is insufficient, since she did not know where the original documents were and she did not recall reading the transmittal sheet.

Further, defendant cites *Dick v. Zimmerman* (1903), 105 Ill. App. 615, *aff'd* (1904), 207 Ill. 636, and other cases for the proposition that where there is no evidence that the addressee of a letter ever received it or that the letter was mailed, the letter is not admissible. Defendant contends that in the instant case, there is a lack of proof of the author of the letter and that the letter was received by the addressee.

First, we find that the evidence belies defendant's assertion that the "faxed" letter was not received by the addressee. The evidence shows that the transmittal cover sheet which defendant filled out named "Mike Flynn" as the "addressee"; and Flynn testified that he received the letter which defendant sent.

Second, we reject defendant's contention that Flynn was not able to attest that the documents were received through his facsimile machine. Flynn testified that he received the documents when his secretary put them on his desk. Flynn stated that printed on the documents was the facsimile "telephone" number to the facsimile machine in his office. This information indicated to him

that the documents were sent to his office and received from the facsimile machine in his office. We find that this evidence, in addition to Murphy's corroborative testimony as to the "addressee" of the documents and that she sent the document through the facsimile machine, was sufficient to prove that the documents were received from the facsimile machine in Flynn's office.

Further, we find that the evidence was sufficient to establish the authentication of the "faxed" documents. This court has not squarely addressed the issue of the foundation requirements of facsimile documents. We look for guidance to another case in which this court considered foundation requirements for computer printouts. *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, addressed the question of the evidentiary effect given to a Department of Revenue tax correction based upon a computer printout resulting from electronic data processing. (See also *People v. Mormon* (1981), 97 Ill. App. 3d 556, *aff'd* (1982), 92 Ill. 2d 268.) In *Grand Liquor Co.*, we cited the Mississippi Supreme Court case of *King v. State ex rel. Murdock Acceptance Corp.* (Miss. 1969), 222 So. 2d 393, 398, for guidelines for determining the admissibility of computer printouts of business records stored on electronic computing equipment. We held that such printouts are admissible where it is shown that: (1) the electronic computing equipment is recognized as standard equipment; (2) the entries are made in the regular course of business at or reasonably near the time of the occurrence of the event recorded; and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation indicated its trustworthiness and justify its admission. *Grand Liquor Co.*, 67 Ill. 2d at 202, citing *King*, 22 So. 2d at 398.

We are concerned here with the third prong of the test set out in *Grand Liquor Co.*, because defendant's objection is based on the foundation requirement. Ac-

cordingly, it was necessary that the sources of information, method and time of preparation indicated the trustworthiness and justify the admission of the "faxed" letter. Evidence which can establish the foundation requirement, by establishing the trustworthiness of such a document, includes testimony by a person who can explain a business' procedures for compiling information and methods for checking for mechanical and human error; explain the operation of the machine and testify that the machine properly did what it was supposed to do; and testify as to the mechanical reliability of the machine. Tapper, *Evidence from Computers*, 8 Ga. L. Rev. 562, 595 n.193 (1974).

We find that the foundation requirements of the facsimile transmittal were properly established. Murphy testified as to Mailboxes, Etc.'s procedures for sending a document via the facsimile machine. She stated that the customer fills out the cover sheet indicating the person to whom the document is directed and the facsimile number of the "addressee." Murphy also stated that the facsimile machine was programmed to reflect the store's name on transmitted documents, and that the machine recorded the time and date of transmittal accurately. Murphy stated that her name appeared on all cover sheets, including the one sent with defendant's letter, in case the document needed to be resent.

The evidence indicates that resending, however, was unnecessary. Murphy did not indicate that there was any problem with the transmittal of the document. Further, Flynn testified that he received the document on the afternoon on which it was sent. In addition, defendant testified that he had used the facsimile machine at the Mailboxes, Etc. store 50 or 60 times before, and defendant did not testify that there ever was a problem with the use of the machine. We also note that Mary Riley testified, and defendant also admitted, that in March

1989, defendant gave the same letter as the one "faxed" to Flynn, to Riley through her boss, Ron Garvey. Accordingly, the evidence was sufficient to establish the authenticity or foundation of the facsimile documents.

Finally, defendant asserts that the "faxed" letter and transmittal sheet are inadmissible hearsay documents, since the meaning of the writing on the documents, both printed and handwritten, was testified to by third parties, other than the authors of the writing. Defendant contends that the facsimile-machine-generated computations as to time, date, and sender constitutes inadmissible hearsay of whoever programmed the facsimile machine. Testimony by anyone else is hearsay since it is not based on personal knowledge.

Defendant failed to raise these objections in his posttrial motion in the trial court. Accordingly, defendant failed to preserve these issues for appeal, and we need not consider them. *People v. Enoch* (1988), 122 Ill. 2d 176, 186.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Appellate court affirmed.*