The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Harold CUNEFARE, Defendant–
Appellant.

No. 01CA0584.

Colorado Court of Appeals,
Div. IV.

Sept. 25, 2003.

Rehearing Denied Oct. 30, 2003.*

Certiorari Granted March 8, 2004.

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

* Nieto, J., would GRANT as to Part IA.

Ken Salazar, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Harold Cunefare, appeals the judgment of conviction entered upon a jury verdict finding him guilty of tampering with a witness and forgery. We reverse and remand.

In March 1998, the victim, defendant's ex-wife, made a domestic assault complaint against defendant. The People charged defendant with second degree assault and other crimes.

In April 1998, the victim called the victim-witness advocate assigned to the case and said she wanted the charges against defendant dropped. The victim then sent a signed, notarized letter dated April 6, 1998, to the district attorney's office stating that she did not tell the truth about the March incident and had made the statements out of anger.

The victim moved to Tennessee, and in November 1998, trial was set and the assault and related charges were immediately dismissed, in part because the prosecutor could not locate the victim.

Subsequently, the People charged defendant with witness tampering and forgery in connection with the victim's April 1998 recantation letter and a subsequent letter that defendant apparently signed. The district attorney received both letters before trial was set.

At trial, the victim asserted that she did not author the April 1998 letter and that defendant asked her to sign it. She testified that she signed the letter out of fear. However, she conceded that she originally faxed the April 6 letter to the district attorney's

office from her office when defendant was not present.

The victim also testified that in August 1998, defendant contacted her in Tennessee and said he would send a second recanting letter for her to sign and forward to the district attorney's office. The victim testified that she tore up the letter and did not sign or mail it.

However, the district attorney's office received a copy of that letter signed with the victim's name. The victim opined that defendant had signed her name to the second letter because she recognized his handwriting.

## I.

Defendant contends that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he committed tampering with a witness and forgery. We agree.

### A. Tampering with a Witness

■ Under § 18–8–707(1)(a), C.R.S.2002, a defendant tampers with a witness if he "intentionally attempts without bribery or threats to induce a witness" to "[t]estify falsely or unlawfully withhold any testimony." It is not necessary that the defendant succeed in inducing the witness to testify falsely or refrain from testifying. *See People v. Scialabba,* 55 P.3d 207, 210 (Colo.App.2002)(quoting *People v. Moyer,* 670 P.2d 785, 791 (Colo.1983)). "The essence of the crime of tampering with a witness is an intentional attempt to interfere with a witness, without regard to the success or failure of the attempt." *People v. Scialabba, supra,* 55 P.3d at 210.

■ However, the People must prove an attempt to interfere with actual testimony, which is anticipated to be offered at a hearing, trial, or other proceeding where witnesses would be sworn. *Compare People v. Scialabba, supra* (the defendant mailed a letter to the victim suggesting that she not appear in court and later asked a third party to request that the victim not appear), *with People v. Moyer, supra* (the defendant threatened suit if the witness appeared be-

fore the grand jury). Indeed, a division of this court determined that a charge of tampering under § 18–8–707(1)(b), C.R.S.2002, requires proof that the witness has actually been legally summoned to testify. *People v. Yascavage,* 80 P.3d 899, 2003 WL 21511767 (Colo.App. No. 01CA1437, July 3, 2003).

■ Here, the prosecution alleged that defendant tampered with the victim when he asked her to send a letter to the prosecution stating that "the events of that evening on March 21 1998[sic] never happened."

Although the record shows that the victim had given a "statement" to the prosecutor before she faxed the April recantation letter, here, nothing suggests that the statement was sworn or otherwise consisted of testimony. In fact, the record discloses that one reason the assault charges were dropped is that the prosecutor could not locate the victim and she was not subject to a subpoena.

At most, defendant asked the victim to attempt to persuade the prosecutor with a false letter, although defendant maintains that the letter was factually correct. Even if the letter could later be used to impeach testimony, it was not an attempt to induce the victim to testify falsely. Under these circumstances, the record is devoid of proof necessary to reasonably convince the trier of fact that a violation of § 18–8–707 occurred.

The People argue that defendant's request to the victim "had the practical effect" of asking her to withhold testimony, but, in fact, there is nothing to show that her testimony was of any concern to defendant. Instead, the record discloses that defendant's sole goal was to persuade the prosecutor to drop charges, and the victim's testimony at a hearing or trial was not considered. If the prosecution's view were correct, no defendant could ever request a party to "drop charges" without running afoul of the tampering statute.

Therefore, we conclude that the evidence as a whole, even viewed in the light most favorable to the prosecution, is insufficient to support a conclusion by a reasonable person that defendant was guilty of this charge beyond a reasonable doubt. *See Kogan v. People,* 756 P.2d 945 (Colo.1988).

## B. Forgery

We also agree with defendant that his conduct did not violate the applicable section of the forgery statute as a matter of law.

Where a defendant passes an instrument he knows to be false, a presumption arises that he passed it with the intent to defraud, and the fact finder may infer intent to defraud. *People v. Brown*, 193 Colo. 120, 562 P.2d 754 (1977). It is not essential that the person receiving the instrument be defrauded because the crime is complete when the act and guilty knowledge coincide with the intent to defraud. *Gentry v. People*, 166 Colo. 60, 441 P.2d 675 (1968).

Section 18–5–102(1)(c), C.R.S.2002, states:

A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: ...

(c) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status....

Here, defendant sent a letter that purported to be the victim's statements to the prosecutor's office and signed the victim's name as the author. We are therefore presented with the question of whether defendant's conduct in crafting the fictitious letter constitutes forgery for purposes of § 18–5–102(1)(c). We conclude that it did not because the letter was not an instrument that had the legal efficacy to affect a legal right, interest, obligation, or status.

The interpretation of statutes is a question of law subject to de novo review. *Hendricks v. People*, 10 P.3d 1231 (Colo. 2000). In construing a statute, we must ascertain and give effect to the intent of the General Assembly. To determine that intent, we look first to the plain and ordinary meaning of the statutory language. *People v. Dist. Court*, 713 P.2d 918 (Colo.1986). When the language is clear and unambiguous, the statute must be construed as written, without resort to interpretive rules and

statutory construction. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994). If, however, the statutory language lends itself to alternative constructions, and its intended scope is unclear, we may apply other rules of statutory construction to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation. *People v. Terry*, 791 P.2d 374 (Colo.1990).

A statute must be read and considered as a whole and should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. *People v. Dist. Court, supra.* An interpretation that renders a particular clause meaningless should be avoided. *People v. Terry, supra.*

Defendant argues that falsely making a "written instrument" is not a crime under § 18–5–102(1)(c) unless it "purports to be," is "calculated to become," or is "to represent if completed" a "deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or other affect a legal right, interest, obligation, or status."

Defendant argues that the letter in question is not the type of "instrument" contemplated by this section of the forgery statute. *See People v. Avila*, 770 P.2d 1330 (Colo.App.1988)(concluding that the term "written instrument" included a computer disc). We agree and conclude that to satisfy subsection (1)(c) of the forgery statute, a document must purport to have legal efficacy that affects some right or status.

A letter urging the prosecutor to drop criminal charges, does not affect the type of interest, right, or status contemplated by § 18–5–102(1)(c). That interest or status contemplated under § 18–5–102(1)(c) must necessarily relate to a financial, testamentary, real property, personal property, or privilege interest.

Although Colorado forgery cases are relatively sparse, in each case the instrument on its face demonstrated a legal efficacy concerning a financial testamentary, real property, personal property, or privilege interest that was injured by the forgery. For exam-

ple, in *Duncan v. People*, 178 Colo. 314, 497 P.2d 1029 (1972), the defendant forged bank checks, which were honored as real bank drafts, to acquire funds. In *People v. Miralda*, 981 P.2d 676 (Colo.App.1999), the defendant forged resident alien cards to acquire the privilege of immigration status, thereby purporting to grant a legitimate immigration status. In *People v. Avila, supra,* the defendant changed computer records to acquire driving privileges for his clients, thereby creating false records that appeared to be accurate and confirm the existence of a driving privilege. In each case, the instrument forged purported to have some legal authority or efficacy designed to deceive or injure.

Here, defendant did not seek to acquire a privilege or any interest; hence, the letter did not purport to have legal efficacy. While it is evident that he acted as an imposter and assumed another's identity, there was no forgery under § 18–5–102(1)(c) because, at most, the letter sought to affect the discretion of the prosecutor, who had authority to move for the dismissal of charges against him.

The letter created no legal right or obligation. *See State v. Nguyen*, 123 N.M. 290, 939 P.2d 1098 (App.1997)(a false bingo card appeared to be a game winning card). *But see People v. Muzzarelli*, 331 Ill.App.3d 118, 264 Ill.Dec. 536, 770 N.E.2d 1232 (2002)(a false letter to the court seeking a lenient sentence satisfied forgery statute); *cf. People v. Hagan*, 145 Ill.2d 287, 164 Ill.Dec. 578, 583 N.E.2d 494 (1991)(a false letter misrepresented bank balances and had legal efficacy because it made a reliable representation to a lessor).

Here, no obligation or power of the prosecutor was implicated. Even if the letter had been authentic, it had no legal efficacy because the victim had no legal right to have the charges dismissed or brought in the first instance. The letter consists of opinion, allegations, and importunate pleas, none of which create or purport to create an interest or status.

We therefore conclude that a false letter seeking the prosecutor's sympathy and action cannot constitute forgery under § 18–5–102(1)(c) as a matter of law.

## II.

In light of our decision to reverse the convictions, we need not reach the other issues raised by defendant.

The judgment is reversed, and the case is remanded to the trial court with instructions to dismiss the charges.

Judge RULAND ** concurs.

Judge NIETO concurs in part and dissents in part.

Judge NIETO concurring in part and dissenting in part.

I respectfully dissent from the majority's conclusion in Part IA. In all other respects, I concur.

In Part IA, the majority concludes that the evidence is insufficient to support the conviction for tampering with a witness under § 18–8–707(1)(a), C.R.S.2002. In my view, the majority has interpreted § 18–8–707(1)(a) too narrowly and failed to give the prosecution the benefit of every reasonable inference that might be drawn from the evidence.

The evidence here showed that the victim, defendant's wife, reported to the police that defendant had assaulted her with a shotgun. Defendant was charged with second degree assault and other charges (the assault charges). Defendant then began an effort to get the assault charges dismissed. He prepared a letter for the victim that withdrew the accusations in her original report of the assault. The victim testified that she signed the letter and sent it to the prosecutor because she feared defendant. Defendant then prepared another similar letter and sent it to the victim with instructions to sign it and send it to the prosecutor. The victim testified that she destroyed the second letter. However, a letter with the victim's purported

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

signature, having content similar to the second letter, was sent to the prosecutor. Evidence was presented showing that defendant signed the victim's name on the second letter received by the prosecutor.

The majority states, "there must be proof that there was an attempt to interfere with actual testimony" and goes on to note that the victim's original statement to the police was not sworn and did not "otherwise consist[] of testimony." This emphasis on the existence of "actual testimony" misperceives the harm the statute seeks to prevent. The statute seeks to prevent conduct that would interfere with a witness the defendant "believes *is to be called* to testify ... or who *may be called* to testify." Section 18–8–707(1) (emphasis added). The very language of the statute indicates that the proscribed conduct would precede the witness's actual testimony, and nothing in the language of the statute requires that the witness actually testify before the crime is complete. The majority, in effect, has added an element of "actual testimony" where none exists in the statute.

The statute applies to a person who attempts to interfere with a *prospective* witness. *People v. Moyer*, 670 P.2d 785 (Colo. 1983). A division of this court, in *People v. Scialabba*, 55 P.3d 207, 210 (Colo.App.2002), held that the crime of tampering with a witness was completed when the attempt to interfere with a witness was made. Therefore, once defendant engaged in conduct constituting an attempt to induce the victim to alter or withhold testimony he believed she would give at some time in the future, the crime was complete.

Accordingly, I disagree with the conclusion of the majority that the absence of proof that the victim presented "actual testimony" in the assault case resulted in insufficient evidence to sustain the conviction.

The majority holds that because defendant did not consider the victim's testimony and because his primary goal was to have the assault charges dismissed, his conduct did not constitute tampering with a witness. The majority bases its holding on the conclusion that the record shows only that the defendant asked the victim to persuade the prosecutor to dismiss the assault charges by the use of a false letter.

To the contrary, I conclude that that the jury could reasonably have inferred from the evidence that defendant was intentionally attempting to induce the victim to alter or withhold her testimony. Such intent is not inconsistent with the goal of having the charges dismissed because if the victim altered her testimony as suggested by defendant or refused to testify, the prosecutor may have dismissed the charges for that reason.

Where the sufficiency of the evidence is challenged, the duty of the appellate court is to view the evidence as a whole and in the light most favorable to the prosecution, and then determine whether, based on that evidence, a reasonable person could conclude that the defendant is guilty beyond a reasonable doubt. In making that determination, we must give the prosecution the benefit of every reasonable inference that can be fairly drawn from the evidence. It is the province of the jury to determine the credibility of witnesses and to weigh the evidence, including resolving conflicts in the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

I conclude that the evidence supports the jury's verdict for the following reasons.

First, defendant's conduct was an attempt to destroy, or at least harm, the credibility of the victim's original statement. Because the victim could not effect the dismissal of the charges, and therefore, she may have been required to testify in defendant's trial, it is a reasonable inference from the evidence that defendant intended to induce her to alter or withhold her testimony.

Second, if the victim contradicted her original statement, it would be difficult for her to renounce her recantation and testify consistently with her original statement. Thus, defendant's conduct could have had the effect of inducing the victim to alter or withhold her testimony. It did not have that effect because she testified consistently with her original statement. However, it is not necessary that defendant succeed in his attempt to tamper with a witness; it is sufficient that he

made the attempt. *See People v. Scialabba, supra.*

Third, if the victim testified consistently with her original statement, under § 16–10–201, C.R.S.2002, the victim's recantation, which defendant was attempting to induce, would be admissible as a prior inconsistent statement both for impeachment and as proof of the facts contained in the statement. Thus, the victim's altered statement could be admitted as substantive evidence, and defendant's conduct would have had the same effect as if the victim had testified falsely.

Fourth, defendant argues that he was trying to get the assault charges dismissed by getting the victim to tell the truth. While there was evidence challenging the credibility of the victim's original statement, it was the jury's province to decide that question. The jury was free to reject defendant's argument and conclude that he intended to induce the victim to alter or withhold her testimony. *See Kogan v. People, supra,* 756 P.2d at 950 ("An appellate court is not permitted to sit as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion from the same evidence").

Accordingly, I would affirm the defendant's conviction for tampering with a witness. I reach this conclusion without considering defendant's contention that certain evidentiary rulings constituted reversible error. In light of the majority's decision, it is unnecessary to consider those issues here.