THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
WILLIAM ROSE, Defendant-Appellee.

First District (5th Division)   Nos. 62837, 62838 cons.

Opinion filed December 1, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Oliver, Caplan & Belkind, of Chicago (Frank Oliver, Mitchell Caplan, and Arthur Belkind, of counsel), for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)) from an order dismissing two criminal complaints for failure to state offenses.

Defendant is the vice-president and general manager of the Pegasus Company, which describes itself as a racetrack messenger service. They accept money at various off-track sites and deliver it to local racetracks, where it is then wagered according to the directions previously provided by their customers. For their service, they charge 10% of the amount of the wager, regardless of the outcome of the race.

Defendant was charged in two complaints with gambling and in a third complaint with keeping a gambling place in violation of sections 28—

1(a)(5)[1] and 28—3[2] of the Criminal Code. (Ill. Rev. Stat. 1975, ch. 38, pars. 28—1(a)(5), 28—3.)[3] A bench trial on the first gambling charge resulted in defendant's acquittal. Turning its attention to the two remaining cases, the court noted that they arose from "approximately similar circumstances" as the first case. However, rather than enter a finding of not guilty on these charges, the court announced it would entertain a motion to dismiss. (Ill. Rev. Stat. 1975, ch. 38, par. 114—1.) It suggested that the remaining cases be disposed of in this manner, in order to allow the State to appeal, an avenue foreclosed to them by a finding of not guilty. (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1).) The court stated that its intention in allowing the State to appeal was to obtain precedent as to whether racetrack messenger services, such as Pegasus, are legal. In preparation for appeal, the court advised the State to amend their complaints, setting forth the basis of their argument, a stipulation of facts, and the evidence adduced at the just concluded trial. Thereafter, the State amended the complaints to their present form.

"AMENDED COMPLAINT 75MC1 E740420

Officer Edgar Buck, complainant, now appears before The Circuit Court of Cook County and states that William Rose has, on or about July 9, 1975 at Suite 213, 343 S. Dearborn, Chicago, Illinois, committed the offense of Gambling in that he knowingly accepted and possessed seven dollars ($7.00) U.S.C. from Mrs. Vera Garrison for the purpose of using part of that money to purchase pari-mutuel tickets at Arlington Park Race Track on behalf of Mrs. Garrison, said purchase to be performed by an agent or employee of 'Pegasus Co.', a licensed Illinois Corporation (see copy of Charter, including Corporate Purposes attached), pursuant to the terms and conditions set forth on a printed form (front and reverse side) which was filled out by William Rose and initialed by William Rose and Vera Garrison. (See Copy of order slip attached). Further, William Rose wrote the letters 'AP' next to

---

[1] Section 28—1(a)(5) provides:
"(a) A person commits gambling when he: ° ° °

(5) Knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered, or knowingly possesses any money which he has received in the course of a bet or wager." Ill. Rev. Stat. 1975, ch. 38, par. 28—1(a)(5).

[2] Section 28—3 provides in part:
"A 'gambling place' is any real estate, vehicle, boat or any other property whatsoever used for the purposes of gambling. Any person who knowingly permits any premises or property owned or occupied by him or under his control to be used as a gambling place commits a Class A misdemeanor. Each subsequent offense is a Class 4 felony. ° ° °" Ill. Rev. Stat. 1975, ch. 38, par. 28—3.

[3] Defendant was also charged with violation of a municipal ordinance; however, the record does not reflect the exact nature of the charge nor is its subsequent dismissal part of this appeal.

'track' on the form, signifying Arlington Park, and wrote various numbers on the form indicating three horses in separate races with a $2.00 wager to be placed on each, in violation of Chapter 38, Section 28—1(a)(5), Illinois Revised Statutes."

"AMENDED COMPLAINT NO. 75MC1 E740421

Officer Edgar Buck, complainant, now appears before The Circuit Court of Cook County and states that William Rose has, on or about July 9, 1975 at Suite 213, 343 S. Dearborn, Chicago, Illinois, committed the offense of Keeping a Gambling Place in that he knowingly on premises occupied and controlled by him as an officer of 'Pegasus Co.' on the above premises, accepted seven dollars ($7.00) U.S.C. from Mrs. Vera Garrison for the purpose of using part of that money to purchase pari-mutuel tickets at Arlington Park Race Track on behalf of Mrs. Garrison, said purchase to be performed by an agent or employee of 'Pegasus Co.,' a licensed Illinois Corporation (see copy of Charter, including Corporate Purposes attached), pursuant to the terms and conditions set forth on a printed form (front and reverse side) which was filled out by William Rose and initialed by William Rose and Vera Garrison. (See copy of order slip attached.) Further, he knowingly permitted said premises to be used in the same manner for the ordering of wagers by the general public, in violation of Chapter 38, Section 28—3, Illinois Revised Statutes."

The "order slip" and "printed form" referred to and incorporated into the amended complaints are contained on a single printed page. Side one consists of a grid with spaces to mark the race, horse, and amount wagered. Below this is an authorization contract with signature lines for both the customer and a representative of Pegasus. The contract provides:

"I herewith appoint any person provided by Pegasus Company, to act as my attorney in fact in purchasing parimutuel tickets for me, as above indicated. I do so subject to the terms and conditions on the reverse side hereof. I direct my agent:

☐   Redeem my parimutuel tickets

☐   DO NOT redeem my parimutuel tickets

I authorize and direct Pegasus to deliver money or property accruing hereunder to the bearer of this receipt upon demand.

| /s/VG. | /s/AR. |
|---|---|
| Signature by Initial | For Pegasus Co." |

The terms and conditions referred to in the contract are printed on the reverse side of the "order slip."

## "TERMS AND CONDITIONS

PEGASUS COMPANY, a corporation charted under the laws of the State of Illinois, provides attorneys-in-fact (herein referred to as agents) for appointment by individual principals, who confer upon such agents the power to purchase parimutuel tickets for such empowering principal to the extent that such principal can himself lawfully make such purchase. An agent, if empowered to redeem parimutuel tickets for his principal, will do so when the principal could himself lawfully redeem.

Money paid to Pegasus does not constitute a bet or wager. When tendered to Pegasus by a principal, Pegasus will provide an agent to be empowered by that principal to place such money in the parimutuel pool (designated on the reverse hereof) of any enclosed race track which is licensed by the Illinois Racing Commission to conduct race meetings.

In consideration for providing an agent, Pegasus Company charges the principal a fee of 10% of the cost of any parimutuel ticket purchased. Said fee is payable regardless of the outcome of the event to which a ticket relates. Neither Pegasus nor any agent provided by Pegasus shall be entitled to further compensation, regardless of the outcome of such event.

In case of late scratches, all money will be returned to principal less the 10% fee. In case of early scratches, all money will be returned to principal.

Scratch of part of entry does not revoke the agent's authority to purchase parimutuel tickets on the remaining part of such entry.

Notwithstanding any other representation contained herein, agents provided by Pegasus will not redeem any parimutuel ticket where redemption is conditioned upon identification by the holder of such ticket. In such case, the agent will deliver the redeemable ticket to Pegasus for delivery to the principal.

A parimutuel ticket which either is not redeemed or not redeemable will be delivered on demand to the holder of this receipt.

Redemption of this receipt must be made within 14 days of issue, for either parimutuel tickets or their redemption value. No ticket will be held in excess of 14 days. Redeemable tickets held by Pegasus will be redeemed by Pegasus upon the expiration of such 14 day period.

Neither Pegasus nor any agent provided by Pegasus warrants performance hereunder, or assumes liability for default by either,

caused by circumstances over which neither Pegasus nor such agent has control (e.g., traffic delays, robbery, etc.). Where performance by agents is frustrated in consequence of such events, a principal shall be entitled to a refund of all money. Such refund shall be deemed liquidated damages, and principal shall not be entitled to any further damages or compensation.

PEGASUS COMPANY"

Following the presentation of these complaints, defendant declined to make a motion to dismiss. In fact when apprised of the court's intention, he objected, waived all defects in the complaints, and sought to enter a plea of not guilty. At this point the court reiterated its desire for a higher court ruling on the matter, but defendant still refused to seek a dismissal. Consequently, the court struck the complaints on its own motion, holding that they failed to state an offense as required by section 111—3(a)(3) of the Code of Criminal Procedure. Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)(3).

When pressed for written findings, the court indicated that the basis for its decision could be found in the report of proceedings in the trial previously held, and the report was therefore included in the record on appeal.

From this decision the State appeals, contending that the complaints adequately state offenses.

OPINION

Section 111—3 of the Code of Criminal Procedure sets forth the minimum standards a complaint must meet in order to withstand a motion to dismiss.[4] Insofar as pertinent here, this section requires that "A charge * * * allege the commission of an offense by:

* * *

3) Setting forth the nature and elements of the offense charged; * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 111—3(a)(3).)

In applying the standards of this section courts have generally tested the adequacy of a complaint by whether it specifically states " ' * * * the elements of the offense with sufficient particularity to apprise accused of the crime charged and to enable him to prepare a defense and permit a

---

[4] Section 111—3 provides in part:

"*Form of Charge.*

(a) A charge shall be in writing and allege the commission of an offense by:

    (1) Stating the name of the offense;

    (2) Citing the statutory provision alleged to have been violated;

    (3) Setting forth the nature and elements of the offense charged;

    (4) Stating the date and county of the offense as definitely as can be done; and

    (5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty. * * *." Ill. Rev. Stat. 1975, ch. 38, par. 111—3.

conviction or acquittal to be pleaded in bar of a subsequent prosecution for the same offense * * *.' [Citations]." (*People v. Grieco* (1970), 44 Ill. 2d 407, 409, 255 N.E.2d 897, 898-99.) Here, however, defendant has never contended that they do not adequately inform him of the nature of the charges against him. Clearly, they do. Indeed, defendant admitted as much when he attempted to waive all defects in the complaints and proceed to trial. Rather, defendant having been forced on appeal to attack the complaints raises a novel issue.

The two amended complaints in the instant case are somewhat unusual. In contrast to the normal criminal charge, both complaints contain a detailed statement of facts and a minimum of conclusory language. Although the complaints sufficiently allege all elements of the offenses charged, they also allege facts, which defendant contends, constitute an affirmative defense to these charges. He argues that both complaints clearly allege that defendant accepted monies to be bet only in his capacity as agent for delivery, not as a bookmaker. He also claims that neither complaint alleges that wagers were made anywhere but at legally authorized racetracks. Because such wagering is authorized by statute under section 28—1(b)(3) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 28—1(b)(3))[5], he concludes the complaints state no offenses.

■■ We do not agree. The case law and statutes are clear. The function of a complaint is to advise the accused of the nature and elements of the charge against him, so he may adequately prepare a defense. (Ill. Rev. Stat. 1975, ch. 38, par. 111—3; *People v. Dillon* (1968), 93 Ill. App. 2d 151, 236 N.E.2d 411.) These complaints adequately fulfill this function.

Nevertheless, both parties and the trial court would have us look beyond this standard in order to reach the merits of this case. Although we share the trial court's desire for precedent in this matter, we think it is unwise to obtain it in this fashion.

We have found no case similar to this; however, in light of the nature of a complaint, we are of the opinion that the merits of a case were never meant to be decided within the vacuum of a motion to dismiss. As a preliminary pleading, a complaint should contain no more than a cursory statement of the facts informing defendant of the charge. Here, however, the State at the urging of the trial court has provided us with detailed complaints containing facts which may constitute an affirmative defense to the charges. The admitted purpose of the trial court in requesting this form of pleading was to frame for this court the issue of whether

---

[5] Section 28—1(b)(3) provides:

"(b) Participants in any of the following activities shall not be convicted of gambling; * * *

(3) Parimutuel betting as authorized by the laws of this State; * * *" Ill. Rev. Stat. 1975, ch. 38, par. 28—1(b)(3).

racetrack messenger services are legal. In the absence of a trial on these two charges, the court erroneously assumed the issue could be reached by including all relevant facts in the complaint.

■■ We disagree. As inclusive as these complaints are, they nonetheless leave many of our questions unanswered. Answers to these questions should be obtained through the normal process of a trial. After all evidence has been adduced, the trial court can then reach a reasoned conclusion based on the evidence. If the court finds defendant not guilty (as it did in the first case here), thereby precluding an appeal, then so be it. If it finds defendant guilty, then any appeal that follows will contain a full record of the proceedings for the higher court to review.

Both parties as well as the trial court have suggested that we consult the report of proceedings on the first gambling charge for the answers we seek. However, in reviewing a motion to dismiss "we are bound to consider only the indictment itself * * *." *People v. Long* (1970), 126 Ill. App. 2d 103, 108, 261 N.E.2d 437, 440.

For the foregoing reasons the judgment of the circuit court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

SULLIVAN and BARRETT, JJ., concur.