THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CAROL T. SMITH, Defendant-Appellee.

Fourth District   No. 4—93—0331

Argued October 13, 1993.—Opinion filed March 3, 1994.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Arthur M. Lerner (argued), of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1993, the State charged defendant, Carol Smith, with three counts of forgery (720 ILCS 5/17—3(a)(2) (West 1992)) and two counts of perjury (720 ILCS 5/32—2(a) (West 1992)). Later that month, defendant filed motions to dismiss the forgery counts and to suppress all materials obtained pursuant to a State's subpoena. In April 1993, the trial court granted both motions. The State filed an interlocutory appeal, and we affirm the order suppressing the evidence and reverse the order dismissing the charge.

## I. THE TRIAL COURT'S DISMISSAL OF THE FORGERY COUNTS

### A. *BACKGROUND*

In March 1993, the State filed an information charging defendant, in part, with three counts of forgery in violation of section 17—3(a)(2) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/17—3(a)(2) (West 1992)). Count I stated the following:

"COUNT I—FORGERY—In that she, between June 1, 1988[,] and February 21, 1989[,] with the intent to defraud, knowingly delivered or caused to be delivered to the Illinois Department of Commerce and Community Affairs (DCCA) Bureau of Tourism a document apparently capable of defrauding Martha Curry; said document being a bid quotation dated January 15, 1989 (a copy of which is attached hereto and by reference made a part hereof as Exhibit 1)[,] which bid quotation was required as part of Tourism Matching Grant Application guidelines which required as follows: '\*\*\* [A] minimum of two competitive bids \*\*\* must accompany the grant application and the itemized budget must reflect the low bid[ ]'; said document having been sent to DCCA for fiscal year 1989 as part of the grant application submitted on behalf of Balloon Classic Illinois (BCI)[,] \*\*\* of which the defendant was a director and officer; and which document purported to have been signed by Martha Curry, knowing the document to have been made by someone other than Martha Curry and without her authority, on stationery prepared at the defendant's direction to appear to be Domar & Associates stationery, knowing that it was not and purporting to be a competitive bid submitted in conjunction with a bid quotation submitted by the defendant as Carol Smith and Associates in order to create the appearance of compliance with grant application guidelines which required evidence of bid solicitation in order to qualify for the Tourism Matching Grant for [BCI] for 1989 and thereby receive grant funds and funds from [BCI] as the advertising vendor for [BCI], in violation of Illinois Revised Statutes, Chapter 38, Section 17—3(a)(2)."

Counts II and III alleged substantially the same conduct but at

different times. Count II claimed that this conduct occurred between July 1989 and February 1990, while count III stated it transpired between July 1990 and February 1991.

Defendant filed a motion to dismiss the information. After a hearing, the trial court granted the motion, finding that the information failed to adequately allege the offense of forgery. Specifically, the court found that count I failed to set forth facts alleging that the document was "apparently capable of defrauding." The court also ruled that counts II and III "do not state a cause of action upon which there could be a defense."

## B. *STANDARD OF REVIEW*

A trial court evaluates the sufficiency of a charging instrument as a matter of law. This evaluation does not involve assessing the credibility of witnesses or weighing testimony. Thus, because this case does not contain any questions of fact, we review the trial court's decision *de novo*. See, *e.g.*, *People v. Garriott* (1993), 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 783; see also *In re D.G.* (1991), 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 ("[W]here neither the facts nor credibility of the witnesses is contested, the issue *** is a legal question which a reviewing court may consider *de novo*").

## C. *SUFFICIENCY OF THE FORGERY ALLEGATIONS*

In *People v. Meyers* (1994), 158 Ill. 2d 45, 51-52, the supreme court discussed the appropriate analysis a court should use when reviewing the sufficiency of a charging instrument, as follows:

"A defendant has the fundamental right, under both the Federal (U.S. Const., amend. VI) and the State Constitutions (Ill. Const. 1970, art. I, § 8), to be informed of the 'nature and cause' of criminal accusations made against him. In Illinois, this general right is given substance by section 111—3 of the Code of Criminal Procedure of 1963 [(Procedural Code)] (Ill. Rev. Stat. 1991, ch. 38, par. 111—3(a)). Section 111—3 is 'designed to inform the accused of the nature of the offense with which he is charged so that he may prepare a defense and to assure that the charged offense may serve as a bar to subsequent prosecution arising out of the same conduct.' [Citation.]

When, as here, the sufficiency of the complaint is attacked in a pretrial motion, the standard of review is to determine whether the complaint complies with the stated requirements of section 111—3. [Citations.] Section 111—3(a) demands that the charging instrument be in writing, stating the name of the offense and the relevant statutory provision violated, setting forth the nature and elements of the offense and the date and county in which the

offense occurred, and naming the accused if known or a reasonably certain description. [Citation.] An instrument which charges an offense in the language of the statute ' "is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged." ' [Citation.]"

Thus, "the relevant inquiry is not whether the alleged offense could be described with greater certainty, but whether there is sufficient particularity to enable the accused to prepare a proper defense." (*Meyers*, 158 Ill. 2d at 54.) However, if the charging instrument fails to properly set forth the elements of the offense, the trial court should grant the motion to dismiss. *People v. Hockaday* (1982), 93 Ill. 2d 279, 282, 443 N.E.2d 566, 567.

■ Defendant was charged with violating section 17—3(a)(2) of the Criminal Code (720 ILCS 5/17—3(a)(2) (West 1992)), which sets forth the offense of forgery by delivery. That crime contains the following five elements: (1) a document apparently capable of defrauding another; (2) a making or altering of that document by one person in such a manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) a knowing delivery of the document; and (5) the intent to defraud. *Hockaday*, 93 Ill. 2d at 282, 443 N.E.2d at 567; see 720 ILCS 5/17—3(a)(2) (West 1992).

Unless the document's apparent ability to defraud another is apparent on its face, the State must allege additional or extrinsic facts showing the document's ability to defraud. (*People v. Spencer* (1987), 160 Ill. App. 3d 509, 512, 513 N.E.2d 514, 515-16.) Section 17—3(c) of the Criminal Code defines a document "apparently capable of defrauding another" as including, but not limited to, "one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated." (720 ILCS 5/17—3(c) (West 1992).) A test for determining whether a forged document is apparently capable of defrauding another is whether a reasonable person might be deceived into accepting the document as genuine. See *People v. Hagan* (1991), 145 Ill. 2d 287, 306, 583 N.E.2d 494, 502.

■ We initially note that the parties, following the compartmentalized findings of the trial court, divide their arguments between count I and counts II and III. We fail to see any meaningful distinction between these two groups. All three counts allege substantially identical conduct, but simply during different periods of time. As such, we discuss and apply our analysis regarding each issue to all three forgery counts in the information.

The State argues that the information sufficiently alleged extrinsic facts demonstrating each document was apparently capable of defrauding. (See *Spencer*, 160 Ill. App. 3d at 512, 513 N.E.2d at 515-16.) The State also contends that the allegations sufficiently apprise defendant of the charges to enable her to prepare a defense and bar any future prosecution for these same acts. See *Meyers*, 158 Ill. 2d at 51.

■ Defendant first responds that the trial court dismissed the information because the bids discussed in those counts were not required by law. Defendant—both before the trial court and on appeal—argues that because competitive bidding was not required by law, the documents cannot be capable of defrauding. Defendant asserts in her brief, "How can [I] be guilty of forgery on a document that is not in any way a legal requirement?" However, defendant fails to cite any authority for this proposition, and we reject it.

Defendant also notes that in order for statutory language alone to sufficiently allege a forgery charge, the face of the document must show that the document itself is apparently capable of defrauding; if the document's capacity to defraud is not facially apparent, then the State must allege extrinsic facts to support its allegations. Because defendant concludes the State did not do so, she argues that the trial court correctly dismissed the forgery counts. We disagree.

●4 Defendant would require the State to allege far more evidentiary matters in the charging instrument than required. (See 725 ILCS 5/111—3 (West 1992); *People v. Givens* (1985), 135 Ill. App. 3d 810, 817, 482 N.E.2d 211, 217 ("The State is not required to plead evidentiary details").) Because the charging instrument is a preliminary pleading, it need not contain more than a cursory statement of the facts. (*People v. Rose* (1976), 44 Ill. App. 3d 333, 338, 357 N.E.2d 1342, 1347.) When, as here, the document's apparent ability to defraud is not clear from its face, the charging instrument must set forth the State's explanation why the document is apparently capable of defrauding, but not necessarily evidentiary matters the State plans to introduce at trial supporting that belief. In other words, in the charging instrument the State is required to explain its theory, not prove its case. We hold that the allegations set forth in counts I, II, and III of the informations before us were more than sufficient to meet that standard.

Our holding comports with the requirements that (1) the charging instrument inform defendant of the charge against her, to assist her in preparing a defense and to bar a future prosecution arising out of the same conduct (see *Meyers*, 158 Ill. 2d at 51), and (2) it need not contain more than a cursory statement of the facts. (See *Rose*, 44 Ill.

App. 3d at 338, 357 N.E.2d at 1347.) If a defendant claims that a charging instrument that meets these minimal threshold requirements does not suffice (when combined with any discovery the State furnishes) to inform her of the charge and allow her to prepare her defense, then she can—and should—seek a bill of particulars under either section 111—6 or 114—2 of the Procedural Code (725 ILCS 5/111—6, 114—2 (West 1992)). However, her available remedies do *not* include dismissal of the charge.

We note that in addition to the narrative allegations set forth in the information, the State also attached a copy of the relevant document and incorporated it into each respective count. We approve of this common practice as a practical and efficient method to both apprise a defendant of the charge against her and to assist in the determination of a document's apparent capability to defraud another.

Next, we address whether the documents attached to counts I, II, and III were "apparently capable of defrauding." Although the parties cite several appellate court decisions regarding whether certain documents were apparently capable of defrauding, we need not discuss those cases because we deem the supreme court's recent decision in *Hagan* dispositive of this issue. In *Hagan*, the defendant faxed a prospective landlord a letter purporting to show his current and average bank account balances. Defendant altered the letter, originally written by a bank employee, to reflect hundreds of thousands of dollars deposited in the bank when his accounts actually contained almost nothing. (*Hagan*, 145 Ill. 2d at 292, 583 N.E.2d at 496.) In finding the evidence supported the defendant's conviction, the supreme court noted that the prospective landlord requested this information and he "might rely on the false information, not knowing it was false, to continue negotiations with defendant and perhaps also execute a lease agreement with defendant." *Hagan*, 145 Ill. 2d at 306, 583 N.E.2d at 503.

The charges in the present case characterize the documents at issue as bid quotations. They describe services to be provided and their prices. The document attached to count I also contains a line entitled "Submitted by" with the allegedly forged signature "Martha Curry" along side. Immediately beneath this is a line entitled "Accepted by" inviting the signature of a Balloon Classic Illinois (BCI) agent.

■ We find these documents apparently capable of defrauding because if a person were to accept or rely upon them, they could create a right or power with respect to certain services. The charges allege that defendant submitted these documents as competitive-bid quotations in order to create the appearance of compliance with

grant application guidelines and receive funds from BCI. Although competitive bidding may not have been required by law, BCI may nonetheless have appropriately used that procedure in selecting a vendor. Furthermore, each count alleges extrinsic facts demonstrating the document was used in an attempt to create a right in defendant to receive funds from BCI. Thus, these documents appear to allow for the creation of a right, obligation, or power. See 720 ILCS 5/17—3(c) (West 1992).

Although the documents referred to in counts II and III do not contain similar "submitted by" or "accepted by" signature lines, the allegations of extrinsic facts allege these documents were also submitted as part of a competitive-bidding process. Thus, these documents were submitted to alter or create a right or obligation between defendant and BCI. The information alleges that BCI requested bids from vendors and defendant submitted forged bids. Just as the landlord in *Hagan* may have relied upon the faxed document purportedly from the bank, BCI may have continued negotiating with defendant and awarded her a contract based upon the forged bids. We believe that a reasonable person could be deceived into accepting these documents as genuine. (See *Hagan*, 145 Ill. 2d at 306, 583 N.E.2d at 502.) Accordingly, we hold that the allegations in counts I, II, and III of the information sufficiently allege that the documents were apparently capable of defrauding another.

Defendant attempts to distinguish *Hagan* on two grounds. First, she argues that in *Hagan*, the supreme court addressed the *sufficiency of the evidence* to support a finding that a faxed document was apparently capable of defrauding. In the present case, on the other hand, the issue is the *sufficiency of the charge*—specifically, whether the document attached to the charge was apparently capable of defrauding. Second, defendant argues that the faxed document in *Hagan* was requested, while here it was not. We find neither distinction persuasive. Instead, we find that the supreme court's analysis in *Hagan* on what constitutes "a document apparently capable of defrauding another" fully applies to determinations on the sufficiency of a charging instrument; otherwise, the law would be in the curious position of imposing a stricter rule regarding what is necessary to merely *charge* the crime of forgery than to sustain a *conviction* of that offense. Further, that the faxed document in *Hagan* was requested is entirely fortuitous, having no significance whatsoever regarding the legal sufficiency of the charge *or* evidence in that case.

## D. *INTENT TO DEFRAUD AND THE PATTERN JURY INSTRUCTIONS*

Defendant also argues that the information is defective because

it alleges that she intended to defraud someone who could not be defrauded by these documents. Defendant notes that the information alleges she intended to defraud Martha Curry. She argues—and is likely correct—that Martha Curry could not be defrauded by these forged documents. Although defendant's claim may be correct, we find her point wholly irrelevant.

In support of her argument, defendant directs our attention to Illinois Pattern Jury Instructions, Criminal, No. 13.40 (3d ed. 1992) (hereafter IPI Criminal 3d), which sets forth the issues in forgery. This instruction requires the State to prove, among other things: "That the defendant [delivered the document] with intent to defraud _____." (IPI Criminal 3d No. 13.40, at 564.) The committee note to instruction No. 13.40 directs that the name of the victim should be inserted in this blank. (See IPI Criminal 3d No. 13.40, Committee Note, at 565.) Defendant thus argues that the State must prove the identity of the person she intended to defraud, and must therefore also properly allege the identity of the intended victim. Although defendant correctly cites the jury instruction, we hold that in this respect, IPI Criminal 3d No. 13.40 misstates the law.

■ While an explanation of the bid procedure may have clarified who would have been defrauded and the extent of such fraud, this information is not necessary either to support a forgery conviction or to uphold a charging instrument. In *People v. Crouch* (1963), 29 Ill. 2d 485, 486-87, 194 N.E.2d 248, 249, the supreme court considered whether an indictment charging forgery was deficient because it did not identify the intended victim. The court rejected this claim, explaining as follows:

> "The gist of the offense of forgery is the intent to defraud involved in the making of a forged instrument or knowingly uttering the same. *** [T]he action is deemed criminal because of an intent to defraud rather than because such an intent is directed toward a specific individual.
> ***
> We therefore hold it unnecessary, in an indictment for forgery *** to include an additional averment that it was done with intent to defraud a specific person." (*Crouch*, 29 Ill. 2d at 488-89, 194 N.E.2d at 250.)

(See also *People v. Moyer* (1971), 1 Ill. App. 3d 245, 249, 273 N.E.2d 210, 213; *People v. Marks* (1965), 63 Ill. App. 2d 384, 388-89, 211 N.E.2d 548, 550.) Furthermore, the State need not prove that someone was actually defrauded. (*People v. Varellas* (1985), 138 Ill. App. 3d 820, 824, 486 N.E.2d 388, 391.) We therefore hold that a charging

instrument alleging forgery need not allege, and the State need not prove, the person whom defendant intended to defraud. To the extent that IPI Criminal 3d No. 13.40 requires otherwise, it erroneously states the law.

Because the identity of the intended victim is not an element of the offense (*Crouch*, 29 Ill. 2d at 489, 194 N.E.2d at 250; *Varellas*, 138 Ill. App. 3d at 824, 486 N.E.2d at 391), we find the inclusion of such an allegation in the charging instrument to be mere surplusage. When an information charges all the essential elements of an offense, surplusage unnecessarily included in the charging instrument may be rejected. (See *Givens*, 135 Ill. App. 3d at 817, 482 N.E.2d at 216-17; *People v. Harper* (1993), 251 Ill. App. 3d 801, 806-07, 623 N.E.2d 775, 779.) The State's inclusion of the identity of an intended victim in this information is mere surplusage.

Furthermore, whether the specific individual alleged to be defrauded was even capable of being defrauded by the forged document makes no difference. Because we find that *any* allegation of a specific intended victim is surplusage, we hold that the fact that a given individual potentially could *not* have been defrauded is irrelevant. Any inclusion of an identified intended victim is surplusage, regardless of whether that person was capable of being defrauded, and therefore need not be considered in evaluating the sufficiency of a charging instrument.

In light of these conclusions, we hold that counts I through III of the information adequately informed defendant of the nature of the alleged offenses so that she could prepare a defense and serve to bar subsequent prosecutions arising out of the same conduct. (See *Meyers*, 158 Ill. 2d at 51; 725 ILCS 5/111—3(a) (West 1992).) Accordingly, we reject defendant's argument that the information here was defective.

## II. THE STATE'S IMPROPER USE OF THE SUBPOENA PROCESS

On July 23, 1991, the State caused a subpoena *duces tecum* to be issued commanding defendant to produce certain documents to a State's Attorney's investigator. At the hearing on defendant's motion to suppress the materials she subsequently produced, the trial court found that the State exceeded its authority and held that the use of such a generalized command under the color of the court should not be countenanced. The court then suppressed the evidence obtained through the use of the subpoena. Defendant argues that suppression was the only reasonable sanction.

The State concedes that the subpoena improperly directed defendant to produce the documents to the State rather than the court. The State argues, however, that suppression was not the proper

sanction. The State claims that defendant had the opportunity to file a motion to quash the subpoena before the trial court, thereby contesting its validity. The State concludes that because defendant failed to use this procedure, she is barred from having the evidence suppressed. We disagree.

Two recent cases address this issue. In *People v. Hart* (1990), 194 Ill. App. 3d 997, 552 N.E.2d 1, the State caused 41 subpoenas *duces tecum* to be issued to various hospitals, hospital personnel, clinics, and physicians. Each of these subpoenas contained the following language: " 'NOTE: Compliance with this subpoena duces tecum may be made by providing legible copies of the documents requested herein to the authorized agent serving this subpoena.' " (*Hart*, 194 Ill. App. 3d at 999, 552 N.E.2d at 2.) The trial court ruled that these subpoenas constituted an abuse of the subpoena power and ordered the subpoenas quashed. The court also ordered that the State could not use any evidence obtained or tainted by the subpoenas. The appellate court affirmed but vacated the order suppressing the evidence because the trial court entered it before holding a factual hearing on the issue. *Hart*, 194 Ill. App. 3d at 1002-03, 552 N.E.2d at 4.

In *People v. Walley* (1991), 215 Ill. App. 3d 971, 575 N.E.2d 596, the State caused a subpoena *duces tecum* to be issued to a hospital with the same language as in *Hart*. The trial court similarly quashed the subpoena and suppressed all evidence obtained or tainted through its use. The trial court found that the State acted in bad faith by ignoring a previous court order.

The appellate court affirmed and stated the following reasons:

"(1) [the subpoena] provided for extrajudicial delivery and inspection of materials; (2) defendant was denied an opportunity to challenge the issuance of the subpoena since he was not made aware of what materials were sought in the subpoena until after they were obtained by the State; and (3) the subpoena was issued for a date when no court hearing was scheduled or held." (*Walley*, 215 Ill. App. 3d at 975, 575 N.E.2d at 598-99.)

Moreover, the subpoena was sought after the trial court in *Hart* warned the State that this procedure was improper.

The State argues that the evidence here should not be suppressed because, in contrast to *Walley*, the misuse of the subpoena process in this case appears to be an isolated event. The State argues that the suppression in *Walley* was affirmed because the State acted in bad faith and persisted in employing an improper procedure despite case law and recent warnings from the trial court. The State further contends that in both *Walley* and *Hart*, the defendants were not

given the opportunity to challenge the subpoenas because they were unaware that subpoenas were issued. In this case, defendant not only was aware of the subpoena and the documents requested in it, but she was also served the subpoena and responded to it.

Defendant responds that no effective opportunity existed to challenge the subpoena, noting that the subpoena commanded her to produce documents "forthwith." In order to challenge the subpoena, defendant argues that—for all she knew—she would have to take the chance of violating the court's order, thereby subjecting herself to a contempt charge. We agree with defendant.

In *Hart*, the appellate court held that the standard of review in cases in which a trial court sanction is at issue is whether the court abused its discretion. The court cited *People v. Endress* (1969), 106 Ill. App. 2d 217, 245 N.E.2d 26. *Endress* involved the suppression of evidence and imposition of a fine upon a prosecutor who failed to comply with a court's order for discovery. In reviewing those sanctions, the court noted that sanctions imposed for noncompliance with a valid order are questions for the trial court. The appellate court held that it would not interfere unless the sanctions were imposed arbitrarily or capriciously, or were an abuse of discretion. *Endress*, 106 Ill. App. 2d at 223-24, 245 N.E.2d at 29.

■ The subpoena in this case commanded defendant to produce documents to the State "forthwith." This denied defendant the effective opportunity to challenge the validity of the subpoena prior to compliance. The subpoena commanded defendant to produce the documents directly to the State. This distinguishes the subpoenas in *Hart* and *Walley*, which allowed, *as an alternative method* of compliance, the production of the documents to the agent serving them. The subpoenas served in *Walley* and *Hart* did not require the defendants in those cases to comply immediately; if they wished, they could have waited and challenged the validity of those subpoenas. The subpoena served in the present case commanded the production of the documents "forthwith," effectively precluding any challenge.

This opportunity to challenge and file a motion to quash a subpoena is particularly important. It permits the subpoenaed party to obtain a judicial examination of the basis for the seizure and reduces the chance of mistake. This is one reason justifying its exception to the fourth amendment requirement of prior probable cause. 2 W. LaFave, Search & Seizure § 4.13(e), at 382 (2d ed. 1987).

We conclude that the record before us contains no evidence suggesting the court's imposition of this sanction was arbitrary, capricious, or an abuse of discretion. See *Hart*, 194 Ill. App. 3d at 1002, 552 N.E.2d at 4.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's order suppressing the evidence obtained through the improper subpoena, and we reverse its order dismissing the forgery counts.

Affirmed in part and reversed in part.

KNECHT and LUND, JJ., concur.