2025 IL App (2d) 240596
No. 2-24-0596
Opinion filed August 21, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF KIRKLAND, | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-L-33 |
| | ) | |
| KIRKLAND PROPERTIES HOLDINGS | ) | |
| COMPANY, LLC I and KIRKLAND | ) | |
| PROPERTIES HOLDINGS COMPANY, | ) | |
| LLC II, and JAMES GENTILE, | ) | Honorable |
| | ) | Bradley J. Waller, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1                                    I. INTRODUCTION

¶ 2     Plaintiff, the Village of Kirkland, appeals an order of the circuit court of De Kalb County imposing sanctions for plaintiff's purported collusion regarding a motion for substitution of judge as a matter of right brought by third-party defendants, a number of property owners impleaded by defendants (Kirkland Properties Holdings Company, LLC I (KPHC I); Kirkland Properties Holdings Company, LLC II (KPHC II); and James Gentile). For the reasons that follow, we reverse and remand.

¶ 3                                    II. BACKGROUND

¶ 4     The instant appeal arises out of ongoing litigation between plaintiff and defendants concerning an annexation agreement pertaining to a subdivision owned by one of defendants' predecessors in interest. Pursuant to the agreement, defendants' predecessor was required to provide letters of credit to secure the completion of roads within the subdivision. Plaintiff alleged that defendants became bound by the terms of the agreement when they purchased a portion of the subdivision (KPHC I bought 15 lots in phase I of the subdivision, which comprised 56 lots, and KPHC II purchased 19 of 26 lots in phase II).

¶ 5     In June 2019, plaintiff initiated an action alleging defendants breached the agreement by failing to deposit letters of credit in an amount proportionate to lots they owned in the subdivision. Defendants moved to dismiss, arguing that, though the agreement ran with the land, it did not apply to entities that purchased less than all of the subdivision. The trial court agreed and dismissed the case with prejudice, also awarding defendants $19,381.24 for attorney fees. This court reversed and vacated the fee award. *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2022 IL App (2d) 200780, ¶ 2. Defendants sought review before the supreme court, which affirmed our decision. *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612.

¶ 6     Following remand from the supreme court, on September 11, 2023, defendants filed a third-party complaint naming 54 individual owners of land within the subdivision, seeking to enforce the annexation agreement against them. Plaintiff sent a letter to third-party defendants explaining that it was not seeking "any financial contribution from its actual residents." On April 24, 2024, during a village meeting, plaintiff explained to third-party defendants that it had contacted an attorney, which it would pay for, to represent them. Attorney Thomas Burney was

hired to represent 43 third-party defendants, who entered into a joint representation agreement with plaintiff in May 2024.

¶ 7    On June 10, 2024, the Burney third-party defendants moved for substitution of judge as a matter of right pursuant to section 2-1001(a)(2) of the Civil Practice Law. 735 ILCS 5/2-1001(a)(2) (West 2024). Defendants filed a response, asserting that third-party defendants and plaintiff were acting in concert and that Burney was actually bringing the motion on behalf and for the benefit of plaintiff. The statute states that a motion to substitute as of right must be made "before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." *Id.* § 2-1001(a)(2)(ii). The statute also contains the following exception: "[R]ulings in the case by the judge on any substantial issue before the party's appearance shall not be grounds for denying an otherwise timely application for substitution of judge as of right by the party." *Id.* § 2-1001(a)(2)(iii). Thus, while third-party defendants had a right to request substitution as a matter of right, plaintiff did not, as several rulings had been made in the case while plaintiff was a party. See *id.* Defendants' response referenced the "test the waters" doctrine, which "permits the denial of an initial motion for substitution of judge before substantial rulings have been made, if the party presenting the motion has been able to form an opinion as to the court's disposition toward his or her case." See *Bowman v. Ottney*, 2015 IL 119000, ¶ 5.

¶ 8    The trial court held a hearing on the motion to substitute on July 25, 2024. Burney argued first, emphasizing that third-party defendants had been brought into the case by defendants' filing of a third-party complaint. He pointed out that the trial court had made no ruling on a substantial issue since third-party defendants had become parties. Burney explained that the "test the waters" doctrine had been rejected by the supreme court in *Palos Community Hospital v. Humana Insurance Co.*, 2021 IL 126008 (holding the "test the waters" doctrine is inconsistent with the

plain language of section 2-1001). He further explained that, where a court erroneously denies a motion for substitution, any subsequent order made by the trial court is a nullity. Finally, Burney asserted that third-party defendants had met all the statutory criteria required to entitle them to a substitution as of right.

¶ 9    Defendants responded that the *Palos* case did not apply under the current circumstances. Defense counsel explained that, in this case, there had been collusion between plaintiff, who had been a party when the trial court made substantial rulings, and third-party defendants. Because they were acting in concert, the previous rulings made while plaintiff was a party should be imputed to new, third-party defendants.

¶ 10    Defense counsel asserted that defendants had sent a notice to produce documents in accordance with Illinois Supreme Court Rule 237 (eff. Oct. 1, 2021). Burney stated that the request had been improperly addressed, delaying when he received it, so the time for him to comply with it had not yet passed. Defendants asserted that the requested documents would establish that plaintiff and third-party defendants were acting in concert.

¶ 11    The trial court asked defense counsel whether he had any authority to support his "in-concert action" argument. Defense counsel stated that it was "a matter of first impression" and that the supreme court had not "addressed the argument we're making." He added that the supreme court had not foreclosed the argument, either. Further, he believed that the documents plaintiff had not yet produced in response to his request would show collusion between plaintiff and third-party defendants and asserted that the motion to substitute amounted to forum shopping.

¶ 12    Burney replied, "There is nothing to suspect that there's some collusion between myself on behalf of these 43 people and the village." He added that the decision to file the motion to substitute was the decision of third-party defendants. The trial court then stated that it wanted the

documents that defendants requested produced. Accordingly, it continued the hearing so that Burney could comply with the request to produce them.

¶ 13    Proceedings resumed on July 31, 2024. Burney produced the joint representation agreement and a retainer agreement with his third-party-defendant clients. He and plaintiff also produced privilege logs, listing what they claimed were privileged communications. Defense counsel asserted that the documents that were produced showed that Burney was solicited and retained by plaintiff. Plaintiff then "convinced the third-party defendants to allow Mr. Burney to represent them." He added that "[t]he village and Mr. Burney are the ones orchestrating the defense on behalf of these third-party defendants." Further, Burney and counsel for plaintiff "repeatedly discuss[ed] strategy in this case." Defense counsel emphasized that plaintiff is paying Burney's "fees in their entirety." Finally, defense counsel asserted that, as the interests of third-party defendants and plaintiff are actually opposed, communications between them were not privileged.

¶ 14    Burney stated that there was no communication from plaintiff to him directing him to file the motion to substitute. Rather, it was his own "professional judgment." He disagreed that his clients' interests were adverse to plaintiff, as plaintiff was seeking only a proportionate contribution under the annexation agreement from defendants. The trial court asked whether plaintiff was paying his fees, and Burney acknowledged that plaintiff was doing so. The trial court then stated:

> "And so that's the difference between the testing of the waters case and this case. You are beholden to your client, the village, not the folks that are sitting out in the gallery. They're not your clients. You're contractually obligated to the village, correct?"

Burney stated (correctly (see *Herbes v. Graham*, 180 Ill. App. 3d 692, 699 (1989) (holding that attorney-client relationship was not dependent upon the "payment of fees or execution of a

contract")) that, despite plaintiff paying his fees, third-party defendants were his clients. The court then asked why, if this was true, would communications between Burney, as attorney for third-party defendants, and counsel for plaintiff be privileged. Burney replied that it was because they were operating under a joint defense agreement. The trial court determined that it had to review, *in camera*, the documents that Burney was claiming were privileged to assess "whether or not the village is directing this motion, which they have no right to do."

¶ 15    However, before the trial court conducted its review, it asked Burney to address the correspondence between him and plaintiff's counsel that he had produced. Burney stated that he was aware that attorney Jennifer Gibson, who was one of plaintiff's attorneys, was "familiar with this area of the law." He reached out to Gibson, who provided him with "some law on this question," which he used in the reply he filed in response to defendants' answer to the motion. The trial court noted that Gibson, an attorney, offered to "ghostwrite" the reply. Burney stated that he wrote and filed the motion. He added that he had no help from plaintiff's counsel.

¶ 16    Defense counsel asserted that the supreme court, in *Bowman*, 2015 IL 119000, held that a strict application of section 2-1001 is not required in all circumstances. He asserted that the statute did not authorize the sort of forum shopping in which plaintiff was purportedly engaged. Following defendants' argument, the trial court directed the parties to brief the issue of how the joint representation agreement impacted the motion to substitute and the claim of privilege regarding communications between plaintiff and third-party defendants. Proceedings were continued until August 20, 2024.

¶ 17    The parties reconvened on August 20. In the interim, defense counsel issued subpoenas to counsel for plaintiff and Burney, which were met with motions to quash. Following argument by the parties, the trial court stated that motions for substitution of judge as of right are typically

granted where, in accordance with *Palos*, they were properly made. The issue, according to the trial court, was whether this motion was properly made. The trial court then recounted the recent procedural history of this case. It noted that on or about May 6, 2024, plaintiff and third-party defendants entered into a "joint defense agreement." It added, "The joint defense agreement and the motion for substitution of Judge are certainly separate but intertwined issues." Generally, "a joint defense agreement is entered into by and between co-defendants in litigation where their legal interests, defenses, strategies, et cetera, align." Counsel for plaintiff and third-party defendants had engaged in correspondence regarding the motion to substitute, and plaintiff's counsel offered "to ghostwrite either the motion or the reply." The trial court acknowledged that the "test the waters" doctrine had been abrogated by the supreme court in *Palos Community Hospital*, 2021 IL 126008. However, the *Palos* case left intact a trial court's inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." The trial court continued, "Even without the testing the waters doctrine, the trial Court may rely on its inherent authority to enter any orders necessary to prevent abuse or manipulation of the legal system." While plaintiff no longer had the right to move for a substitution of judge as of right, third-party defendants "on its face have that right." The trial court then ordered all outstanding documents and a privilege log regarding oral communications that would be responsive to defendants' requests to produce to be turned over to it for *in camera* inspection. (Documents ultimately were produced and reviewed by the trial court *in camera*, but they are not a part of the record.) It then continued the matter.

¶ 18    Proceedings resumed on September 4, 2024. The parties stood on their previous arguments. The trial court granted third-party defendants' motion for substitution of judge, and it sanctioned plaintiff's counsel. It explained that third-party defendants had an absolute right, by statute, to a substitution of judge as of right. It added, "[S]uch a motion is granted when properly made." A

court "has no discretion to deny the motion." The trial court noted that plaintiff secured Burney to represent third-party defendants, and, as part of that legal relationship, plaintiff and third-party defendants entered into a joint defense agreement. The trial court stated that it had reviewed the documents and communications produced by plaintiff's counsel and Burney. Correspondence between Gibson and Burney, on which attorney Michael Smoron (who also represented plaintiff) was copied, shows that plaintiff's "attorneys volunteered to engage in a ghostwriting of the reply" to defendants' response to the motion to substitute. The trial court emphasized that plaintiff was not authorized to participate in any fashion in a motion to substitute as of right. It noted that third-party defendants had no involvement in the case prior to being brought in by defendants. The case had been going on for over five years. The trial court observed that, while Burney's obligations were to his clients, plaintiff was nevertheless paying his fees.

¶ 19     The trial court then considered whether "the village by its attorneys [was] abusing and manipulating the court system by, quote, ghostwriting the reply and having substantive correspondence with Mr. Burney regarding the motion, the reply, and the supplying of applicable case law?" It asked, "Does the granting of the motion somehow benefit [plaintiff]?" The trial court continued: "Firstly, again to reiterate, the village cannot do this on their own. They forfeited that right years ago." It added that it "believe[d]" that, "by participating behind the scenes in assisting and/or helping by drafting and otherwise Mr. Burney," plaintiff was engaged in "an abuse or a manipulation of the system." However, "that begs the question, should the third-party defendants be prevented from having their motion granted." Even if plaintiff and third-party defendants were "acting in concert, the third-party defendants would enjoy the right to have the motion granted as a matter of right."

¶ 20 Further, it was clear that Burney received assistance from plaintiff's counsel. Moreover, it was "not a stretch for the Court to infer that the village has not liked the rulings from this Court" (having successfully appealed one of them in *Kirkland Properties Holdings Co.*, 2022 IL App (2d) 200780, ¶ 2). The trial court opined that an appeal of a ruling that is unsatisfactory to a party is the proper course, rather than "this behind-the-scenes ghostwriting that the village's attorneys decided to engage in." It noted that, because plaintiff's counsel did not sign the motion or reply, Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) did not apply. Nevertheless, the trial court made the following finding:

> "I do find that counsel for the village engaged in a course of conduct that manipulated and abused the court system. Counsel for the village chose to involve themselves in a motion that they had no co-equal right with the third-party defendants to file, nor engage in any sort of discussion, correspondence, research, or preparation of a reply, ghostwriting or otherwise."

In turn, the trial court found that plaintiff's attorneys "should be sanctioned," though it declined to sanction Burney or third-party defendants. It emphasized that, while third-party defendants had "the right to pursue this motion, *** the attorneys for [plaintiff] had no business involving themselves in any way with the preparation of the motion." Citing its inherent authority to "prevent abuse and manipulation of the court system," the trial court sanctioned plaintiff's counsel in "the sum of $8,000, which shall be payable to defendants' counsel for having to defend and ferret out the gamesmanship of counsel for [plaintiff]." The trial court then granted the motion for substitution, and the case was transferred to Judge Buick. This appeal followed.

¶ 21                                            III. ANALYSIS

¶ 22      On appeal, plaintiff raises one main issue: whether the trial court abused its discretion in imposing sanctions on plaintiff's attorneys for their role in preparing the motion for substitution of judge. Plaintiff also contends that the trial court's imposition of sanctions violated its due process and first amendment rights; however, as we resolve this case on a nonconstitutional basis, we decline to address those arguments. See *In re E.H.*, 224 Ill. 2d 172, 178 (2006) ("We have repeatedly stated that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort."). Moreover, as we determine that the trial court abused its discretion in imposing sanctions, plaintiff's assertion that the trial court erred in imposing sanctions in the amount of $8,000 is moot. We now turn to plaintiff's primary argument.

¶ 23      A trial court possesses " 'inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." ' " *Palos Community Hospital*, 2021 IL 126008, ¶ 35 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016), quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). This inherent authority allows a trial court "to enter any orders necessary to prevent abuse or manipulation of the system." *Id.* "Violation of the relevant standards of behavior under which a particular action falls authorizes the circuit court, either *sua sponte* or on motion of the opposing party, to impose a sanction on the offending party." *Santiago v. E.W. Bliss Co.*, 406 Ill. App. 3d 449, 455 (2010), *rev'd on other grounds*, 2012 IL 111792, ¶ 3. Sanctions exist to deter parties " 'from trampling upon the integrity of the court.' " *Id.* at 459 (quoting *Dotson v. Bravo*, 321 F.3d 663, 667-68 (7th Cir. 2003)). "The determination of an appropriate sanction is circumstance specific." *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1052 (1998). We review an imposition of sanctions using the abuse-of-discretion standard. *Cronin v. Kottke Associates,*

*LLC*, 2012 IL App (1st) 111632, ¶ 42. Hence, we will reverse only if no reasonable person could agree with the trial court. *In re Estate of Wright*, 377 Ill. App. 3d 800, 803-04 (2007). Underlying factual findings will be upheld unless they are contrary to the manifest weight of the evidence. See *Sajdak v. Sajdak*, 224 Ill. App. 3d 481, 495 (1992).

¶ 24    As a threshold matter, we must identify the basis for the trial court's determination that sanctions were warranted in this case. The parties disagree on this point. Plaintiff asserts that the sole basis for the trial court's decision was its finding that plaintiff's attorneys were involved in third-party defendants' motion to substitute the judge as a matter of right. Conversely, defendants contend that the trial court based its ruling on additional considerations, namely "the efforts with which the Village's Counsel went to conceal its collaboration with Attorney Burney in relation to the Motion for Substitution." Defendants also point to plaintiff's counsel's failure to correct Burney when he made statements that there was "nothing" to defendants' argument that there was "some collusion between plaintiff and myself."

¶ 25    Regarding defendants' first claim, that of concealed collaboration between plaintiff and Burney, defendants point to plaintiff filing a motion to quash subpoenas they issued to plaintiff's counsel and Burney "under a spurious claim their involvement in the Motion for Substitution was privileged under the joint defense privilege doctrine." Defendants neither explain why—nor cite caselaw establishing that—plaintiff's assertion of privilege was "spurious." Indeed, a motion to quash is a perfectly acceptable way of contesting a subpoena. See *People v. Smith*, 259 Ill. App. 3d 492, 503 (1994) ("This opportunity to challenge and file a motion to quash a subpoena is particularly important. It permits the subpoenaed party to obtain a judicial examination of the basis for the seizure and reduces the chance of mistake."). Moreover, plaintiff produced a privilege log in response to defendants' requests, which is an acceptable way to assert a privilege. See Ill. S. Ct.

R. 201(n) (eff. March 17, 2023); *Zagorski v. Allstate Insurance Co.*, 2016 IL App (5th) 140056, ¶ 35 ("When an objection is based on attorney-client privilege or work-product privilege, the objecting party has the burden to specifically identify the privilege, and must submit a privilege log describing the nature of the documents, communications, or things not produced, and the exact privilege being claimed."). Moreover, we note that the trial court did not mention plaintiff's assertion of privilege or the motions to quash in its order imposing sanctions, which is not surprising, as defendants have not shown that either of these actions were sanctionable.

¶ 26    As for defendants' second claim—that of plaintiff's purported failure to correct Burney's statements that there was "nothing" to defendants' argument that there was "some collusion between plaintiff and myself"—we note that the trial court did not sanction Burney himself for these alleged misrepresentations. Thus, the trial court, having reviewed correspondence between Burney and plaintiff's counsel *in camera*, apparently believed that Burney's statements did not merit sanctions. As such, it is doubtful that the trial court relied on plaintiff's purported omission in ordering sanctions.

¶ 27    Thus, we agree with plaintiff that the basis upon which the trial court imposed sanctions was the involvement of plaintiff's counsel in the motion to substitute, particularly in the drafting of plaintiff's reply to defendants' response to the motion. The trial court expressly stated plaintiff's counsel "engaged in a course of conduct that manipulated and abused the court system." It explained, "Counsel for the village chose to involve themselves in a motion that they had no co-equal right with the third-party defendants to file, nor engage in any sort of discussion, correspondence, research, or preparation of a reply, ghostwriting or otherwise." It did not mention plaintiff's attempts to resist discovery or the failure to correct Burney's alleged misstatements.

¶ 28    Finally, before addressing the merits, we note a factual finding by the trial court that is of significance here. The trial court found that there was collusion between plaintiff's counsel and Burney regarding the motion. It noted that correspondence between Gibson and Burney showed that plaintiff's "attorneys volunteered to engage in a ghostwriting of the reply" to defendants' response to the motion to substitute. It found that Burney did, in fact, receive assistance from plaintiff's counsel. Plaintiff does not contend that any of these findings are contrary to the manifest weight of the evidence. Accordingly, we will accept as true the proposition that plaintiff involved itself in third-party defendants' motion to substitute. We now turn to the merits of plaintiff's argument.

¶ 29    Courts have identified a number of factors relevant to the decision to impose sanctions. In *Santiago*, 406 Ill. App. 3d at 463, the reviewing court identified five such factors:

"(1) which rules of court the plaintiff has violated and under what circumstances; (2) whether the defendant has been prejudiced; (3) whether a lesser sanction is sufficient to cure the prejudice; (4) whether a lesser sanction is sufficient to deter the plaintiff from future violations; and (5) whether a lesser sanction will adequately protect the integrity of the judicial system, as well as any other factors that may be relevant based on the facts and circumstances of that particular case."

The last three factors pertain to the scope of sanctions imposed rather than whether sanctions are warranted in the first place, so they are not relevant to our inquiry. Regarding the first, we can conceive of no rule, ethical or otherwise, that plaintiff has violated, and defendants call our attention to none. Thus, the first factor does not weigh in favor of the trial court's decision to impose sanctions. Second, it is difficult to see how any cognizable prejudice was visited upon defendants here. If one neutral judge were replaced with another, obviously, prejudice would

accrue to no one. In short, the factors articulated in *Santiago* do not militate in favor of an imposition of sanctions here.

¶ 30    In *Cronin*, 2011 IL App (1st) 111632, ¶ 63, the court set forth the following factors: "whether the offending party's conduct resulted in surprise to the adverse party; the extent of any prejudice that was caused to the adverse party; the diligence of the adverse party; and the good faith of the offending party." As noted above, no meaningful prejudice accrued to defendants here. Third-party defendants' motion was properly noticed, and defendants were given ample time to respond, so they were not surprised by it. The diligence of defendants has no relevance here, as this is not a situation where plaintiff's counsel was sanctioned for unduly delaying a trial or some other proceedings. See, *e.g.*, *id.* ¶ 68 ("The record reflects [that the] defendants were generally diligent and timely throughout the litigation and, in particular, as to the trial court's requirements for trial preparation and in bringing the motion for sanctions. *** We do not believe [that the] defendants' late production of documents absolved [the plaintiff's counsel's] failure to abide by the trial court's trial preparation procedures, but we do consider the fact of the supplemental discovery production prior to trial in assessing whether imposition of so drastic a sanction was appropriate."); *cf. In re Marriage of Lugo*, 2015 IL App (1st) 231478, ¶ 112 (contrasting the petitioner's diligence with the respondent's delay that culminated in sanctions).

¶ 31    Whether plaintiff acted in "good faith" is a more complex question. On their face, neither assisting another party in the preparation of a motion or memorandum nor urging another party to do something that party is entitled to do suggests bad faith. Indeed, such cooperation is generally looked upon favorably. Notably, in *Selby v. O'Dea*, 2017 IL App (1st) 151572, ¶ 35, the court, citing section 76 of the Restatement (Third) of the Law Governing Lawyers (2000), recognized the salutary effects of limiting waiver of the attorney-client and work-product privileges when

information is shared between parties with a common interest. It noted that the rule offers " 'the real possibility for better representation by making more information available to craft a position and inform decision-making in anticipation of or in the course of litigation.' " *Selby*, 2017 IL App (1st) 151572, ¶ 51 (quoting *O'Boyle v. Borough of Longport*, 94 A.3d 299, 316 (N.J. 2014)). Further, such cooperation " 'is often not only in [the] best interests [of the parties] but serves to expedite the trial or *** the trial preparation.' " *Id.* ¶ 52 (quoting *United States v. McPartlin*, 595 F.2d 1321, 1337 (7th Cir. 1979)). As the sort of cooperation plaintiff and third-party defendants engaged in is generally encouraged, it is difficult to see how engaging in it could constitute bad faith.

¶ 32    In short, our research has not located a case where sanctions were imposed in a situation similar to that present here. Further, we are aware of no particular rule that plaintiff's counsel violated by cooperating with third-party defendants or urging them to bring a motion that plaintiff could not itself bring. Moreover, defendants call our attention to no such rules.

¶ 33    Both defendants and the trial court rely on *Palos Community Hospital*, 2021 IL 126008, to justify the sanctions order. In that case, our supreme court rejected the test-the-waters doctrine, which " 'permit[ted] the denial of an initial motion for substitution of judge before substantial rulings have been made, if the party presenting the motion has been able to form an opinion as to the court's disposition toward his or her case.' " *Id.* ¶ 27 (quoting *Bowman*, 2015 IL 119000, ¶ 5). After holding that the doctrine was "incompatible with the plain language of section 2-1001(a)(2)" of the Civil Practice Law (735 ILCS 5/2-1001(a)(2) (West 2024)), the supreme court reaffirmed a trial court's inherent authority to manage its docket:

"We acknowledge that a primary concern underlying the test the waters doctrine is that litigants would strategically time the filing of their motions for substitution of judge

as of right as a form of gamesmanship. See, *e.g.*, *Bowman*, 2015 IL 119000, ¶ 18 ('[T]his court has long recognized that courts may take into consideration the circumstances surrounding a motion for substitution of judge and may deny the motion if it is apparent that the request has been made as a delay tactic.'); see *id.* ¶ 25 (observing that section 2-1001 is designed to prevent 'procedural maneuvering'). However, the test the waters doctrine is far from the only tool available to the trial judge to protect the integrity of the court. Settled law recognizes that trial courts possess 'inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." ' *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Even without the test the waters doctrine, the trial court may rely on its inherent authority to enter any orders necessary to prevent abuse or manipulation of the system. See, *e.g.*, *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 66 (1995) ('The recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural rules, and also to empower courts to control their dockets.')." *Palos Community Hospital*, 2021 IL 126008, ¶ 35.

Undoubtedly, the trial court possesses this inherent authority; the question in this case is whether it was used appropriately. As explained above, we find little that suggests that sanctions were an appropriate response to the cooperation between plaintiff's counsel and third-party defendants. Moreover, aside from recognizing this inherent authority, the guidance we can take from *Palos* does not support the trial court's ruling. The "primary concern" the supreme court identified in that case was that a party might "strategically time the filing of [its] motions for substitution of judge as of right as a form of gamesmanship." Here, in contrast, it was defendants who impleaded

third-party defendants; the latter parties, then, promptly moved for a substitution of judge after entering the case.

¶ 34    Finally, we note that the correspondence that the trial court reviewed *in camera* (which, though it was not made part of the record, was read into the record by the trial court) suggests that the motion to recuse was, as Burney asserted in argument, a product of his "professional judgment." In an e-mail dated July 1, 2024, Burney wrote, "*My plan* is to 1, secure order on motion to substitute; 2, file motion to dismiss; 3, move Court for order staying discovery until 30 days after ruling on motion to dismiss." (Emphasis added.) In another e-mail on the same date, as read by the trial court, Burney inquired:

> "Testing the waters defense. Please share any law or thoughts you have on this. I will put together a chrono, I assume it means chronology, on this as the bulk of my response. Any thoughts on interlocutory appeal. He may not grant it, I assume he is referencing me, but there is a way to go to the Appellate Court by permission, eh? Any experience with that? The other opportunity is by mandamus."

Thus, it appears Burney was reaching out to plaintiff's counsel for help with defendants' response to the motion to substitute.

¶ 35    In sum, we hold that the trial court abused its discretion in imposing sanctions where no rule, ethical or otherwise, was violated and plaintiff's counsel was simply cooperating with third-party defendants in something third-party defendants were entitled to do. Indeed, even if plaintiff's counsel urged Burney to file the motion, we are aware of no ethical rule that was violated. This simply was not a situation where plaintiff's counsel contrived to create a situation where a motion to substitute was viable, such as voluntarily dismissing and refiling a case in an effort to avoid the effect of a substantive ruling by the judge that was the object of the motion. See *Bowman*, 2015 IL

119000, ¶ 25. Rather, the motion to substitute was made possible when defendants decided to bring third-party defendants into the case. Nothing sanctionable occurred here.

¶ 36                                    IV. CONCLUSION

¶ 37     In light of the foregoing, the order of the trial court imposing sanctions against plaintiff's counsel is reversed, and this cause is remanded.

¶ 38     Reversed and remanded.

*Village of Kirkland v. Kirkland Properties Holding Co.*, **2025 IL App (2d) 240596**

| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 19-L-33; the Hon. Bradley J. Waller, Judge, presiding. |
|---|---|
| **Attorneys for Appellant:** | Michael J. Smoron and Jennifer J. Gibson, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellant. |
| **Attorneys for Appellee:** | Colin W. Anderson, of Anderson & Uddin, P.C., of Aurora, for appellees. |